[Civ. No. 6015.   First Appellate District, Division One.—November
1, 1927.]

FIRST NATIONAL BANK OF PARK RAPIDS (a Cor-
poration), Appellant, v. R. F. PRAY, Respondent.

Willard P. Smith, Kennett B. Dawson, and Mark J. Wooley for Appellant.

Albert A. Rosenshine, Goldman, Nye & Surr and Vincent Surr for Respondent.

PARKER, J., *pro tem.*—Plaintiff brought this action to recover from defendant upon a written contract of guaranty, as will more fully appear hereinafter. In the court below judgment went for defendant, and thereafter a motion for a new trial interposed by plaintiff was denied. Plaintiff appeals.

The only question before us relates to the application of section 360 of the Code of Civil Procedure, which provides that no acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case

out of the operation of the statute of limitations, unless the acknowledgment or promise is contained in some writing signed by the party to be charged thereby. The facts follow: At Park Rapids, in the state of Minnesota, on the twenty-second day of March, 1915, the White Stores Company made, executed, and delivered to plaintiff its promissory note in writing, which said note was in the usual form, containing a waiver by all signers and indorsers of demand, notice of nonpayment, and protest. The note was signed "The White Stores Company, by J. Shere, Pres. and By R. F. Pray, Secretary." Indorsed on this note is as follows: "For value received I guarantee the payment of the within note at maturity or any time thereafter, waiving demand, protest and notice of protest." (Signed) "R. F. Pray. Endorsement on principal: On principal 5/7/18 $993,21. Balance due, $3506.79."

Nothing has been paid on said note or guaranty save and except the sum of $993.21.

This action was commenced on November 20, 1922.

The trial court found that the action was barred by the statute of limitations of the state of California and by the provisions of section 337 of the Code of Civil Procedure and by section 339 of said code.

It is the claim of appellant herein that this finding is erroneous, and he bases his claim upon a chain of correspondence between plaintiff and defendant running over a number of years, in which correspondence it contends the defendant did make written acknowledgment sufficiently evidencing a new or continuing contract by which to take the case out of the operation of the statute of limitations. We pass, then, to an examination of the correspondence and the writings presented.

The letters comprising the correspondence may be classed in three groups, the first group being letters written prior to the due date of the instrument. Obviously these can be of little aid as, excepting possibly the case of a waiver of the right to plead the limitations statute, no effect could be had upon the running of the statute by admissions or acknowledgments prior to maturity.

The second group consists of letters and correspondence following maturity but prior to the time when ordinarily the statute would have barred the enforcement of the claim.

Payment on original note was due on March 22, 1916. It is admitted that at or about this time the White Stores, maker of the note, became insolvent and its affairs went under the management of a trustee. In June of 1916 the plaintiff wrote defendant concerning the indebtedness here sued on, and requested some new arrangement whereby defendant could have the note guaranteed canceled and replaced by a new note executed directly by defendant. In reply, dated June 22, 1916, defendant stated that inasmuch as plaintiff already had the notes indorsed by himself and Shere he could not see how it could add to the strength of plaintiff to sign another bunch.

In November, 1916, defendant again wrote plaintiff, stating that he was awaiting word from the trustee and his coguarantor Shere, saying, "do not wish to appear as delaying, but I must hear from them before stating definitely what I can do." On December 28, 1916, defendant again wrote plaintiff, wherein he requests that if plaintiff decides to sue on the notes he make the coguarantor Shere a party to the action, saying, "there is no reason why he should escape his liability and the loss be placed upon me, where it does not belong." In this same letter defendant says further that with what plaintiff can get from the trustee and such equities as plaintiff may have against other securities "it would seem that you are pretty well fortified, and I hope you will not see fit to crowd the collection on the endorsement of the paper until the interest of the trusteeship is ascertained."

These letters of 1916 are not relied upon in themselves to offset the bar of the statute of limitations. Giving these letters their utmost strength the statute would have barred the claim on December 28, 1920. They are referred to here merely to illustrate the situation as it then existed between the parties and to show no repudiation of the contract up to that time.

After this correspondence of 1916 the matter rests until 1918. On November 19th of that year plaintiff again wrote to defendant, advising him of balance due on note. In this letter plaintiff makes an offer of compromise and adjustment, in which offer it agrees to accept one-half of the amount, waiving claim for accrued interest. In reply to this letter and under date of November 26, 1918, defendant

replies, acknowledging receipt and thanking plaintiff for the kind manner in which he refers to the notes. In the letter defendant states, "By same mail I also had a letter from the new trustee of the White Stores Co. in regard to a final hearing, and have written my attorneys for a little further information. I should hear from them in a few days and will then communicate with you."

On December 2, 1918, plaintiff acknowledges receipt of this last cited letter and requests consideration at an early date and for defendant's final answer before the 15th of December, 1918. On December 11, 1918, defendant writes plaintiff as follows: "Referring to our recent correspondence in regard to the White Stores Co. notes I have just received a letter from my attorneys at Duluth, saying there was in the hands of trustee considerable amount for distribution to creditors of that company and the distribution would soon be made. When this is done I should be very glad to hear from you again. Please understand I do not wish to stall this matter off, but believe it is only proper to apply the distribution which you receive on these notes before making settlement."

In July of 1919 the matter was by plaintiff placed in the hands of an attorney for action, and the correspondence hereafter is between this attorney and defendant. On July 31, 1919, the attorney wrote defendant, advising him of his handling the matter and requesting his attention. The result of the letters back and forward up to October 4, 1919, shows but little other than defendant's statement of his effort to get his coguarantor Shere to pay his half, in which case defendant promises to send the other half and get it out of the way. In 1920 defendant finally, without express repudiation of the debt, invites suit to determine just what his legal liabilities are. This ends the correspondence and constitutes all of the writings upon which appellant rests its claim that the statute has been tolled to the extent that the present action is not barred.

The law applicable seems undisputed; in fact, both parties here cite much of the same authority in support of their conflicting contentions.

At the outset section 360 of the Code of Civil Procedure is cited and its application conceded to be determinative of the issue involved. This section reads: "No acknowledg-

ment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby." The title referred to in the section is title 2, chapter 4, General Provisions as to Time of Commencing Actions.

It is well established that the code section does not prescribe any form in which an acknowledgment or promise sufficient to lift the bar of the statute of limitations shall be made. It is sufficient if it shows the writer treats the indebtedness as substituting and one which the debtor is liable and willing to pay. From this acknowledgment the law implies a promise to pay (*Concannon* v. *Smith,* 134 Cal. 14 [66 Pac. 40]; *Foster* v. *Bowles,* 138 Cal. 346 [71 Pac. 494]; *Clunin* v. *First Fed. Trust Co.,* 189 Cal. 248 [207 Pac. 1009]; *Searles* v. *Gonzalez,* 191 Cal. 430 [28 A. L. R. 78, 216 Pac. 1003]). The California cases on this subject are reviewed at some length in the case of *Clunin* v. *First Fed. Trust Co., supra,* and this conclusion reached by Shaw, C. J.: "It is clear from all these decisions that no writing is sufficient as an acknowledgment under section 360 unless it contains some reference to a debt, which, either in itself or with the aid of permissible evidence of extrinsic facts in explanation, amounts to an admission that there is a debt existing to the creditor to whom the writing is sent which the debtor is liable to pay and willing to pay." Such acknowledgment may be made to an agent of the creditor or to some person authorized to receive it (*Searles* v. *Gonzalez, supra*).

In the Clunin case the court quotes from *Southern Pacific Co.* v. *Prosser,* 122 Cal. 415 [52 Pac. 837, 55 Pac. 146], as follows: "The distinct and unqualified admission of an existing debt, contained in a writing, signed by the party to be charged, and without intimation of an intent to refuse payment thereof, suffices to establish the debt to which the contract relates as a continuing contract, and to interrupt the running of the statute against the same."

There appears at first blush a difference between the Prosser case and the Clunin case inasmuch as it appears from the conclusion of the court in the latter case that the acknowledgment must contain an admission of a debt which the debtor is liable and willing to pay. However, in the Clunin

case all that the court was called upon to decide and all that was decided was that the writings offered contained no reference to any debt, or any language which could be said to be uncertain in its meaning and subject to explanation by the aid of extrinsic circumstances so as to be made to refer to a debt.

In the instant case respondent concedes that the law does not require an express promise to pay as a part or in addition to the acknowledgment of indebtedness where the statute has not already run. In *Foster* v. *Bowles,* 138 Cal. 351 [71 Pac. 495], it is said: "It was not necessary that respondent should promise to pay the indebtedness in order to establish a new date for the statute to commence running. All that was required was a plain and distinct acknowledgment in writing of the existence of the mortgage."

In the more recent case of *Searles* v. *Gonzalez, supra,* no promise was held necessary to bring the acknowledgment within the terms of the statute.

In the case of *Shirley* v. *Shirley,* decided in this court on May 26, 1927, now found in 83 Cal. App. 386 [256 Pac. 823], the rule is announced as in *Concannon* v. *Smith,* 134 Cal. 14 [66 Pac. 40], that it is sufficient if the writing shows that the writer regards or treats the indebtedness as subsisting, and from the acknowledgment of a subsisting indebtedness the law implies a promise to pay based upon the consideration of the old debt. (See, also, *Minifee* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]; *Curtis* v. *Holee,* 184 Cal. 726 [18 A. L. R. 1024, 195 Pac. 395]; *Wirth* v. *Wirth,* 155 Cal. 599 [102 Pac. 663]; 16 Cal. Jur. 585, 587.)

Before proceeding to apply the doctrine of these cases to the facts before us there is one additional fact to be noted. The note in controversy here constituted the only indebtedness from defendant to plaintiff, and the letters in evidence from defendant referred to this particular note.

The letters which appellant offers to constitute the written acknowledgment are particularly the letters of November, 1918. Upon these letters rests the determination of the question involved. True, we consider all of the correspondence for whatever facts therein may be pertinent in showing the general relationship between the parties, but in themselves any of the correspondence of 1916 could hardly extend the running of the statute to the time this action was commenced.

Taking up, then, the 1918 correspondence. On November 19, 1918, plaintiff wrote defendant Pray that there was no longer any hope of getting anything from White Stores Co., the maker of the note, and advising defendant of the balance due on the said note. Then plaintiff makes the offer that if defendant will send one-half of the balance, without consideration of the interest, the defendant will be released from further liability. On November 26, 1918, defendant writes acknowledging receipt of letter of plaintiff and says: "Wish to thank you for the kind manner in which you have referred to the notes"; in the letter also stating that defendant has written to his attorneys to learn more about the affairs of the White Stores Co. and that when he gets this information he will communicate with plaintiff. In reply comes the letter of December 2, 1918, from plaintiff to defendant, again requesting due consideration of plaintiff's letter of November 26, 1918, and asking to finally answer before December 15, 1918. Now comes the letter of December 11, 1918, from defendant to plaintiff, upon which letter, it may be said, the present controversy centers. We will give this letter in full, omitting date and address:

"Referring to our recent correspondence in regard to the White Stores notes, I have just to-day received a letter from Courtney & Courtney, attorneys at Duluth, saying that there was in the hands of trustee considerable amount for distribution to creditors of that company, and the distribution would soon be made. When this is done I should be very glad to hear from you again. Please understand I do not wish to stall this matter off, but believe it is only proper to apply the distribution which you receive on these notes before making settlement."

In interpreting this letter counsel have devoted some effort in an endeavor to give us the meaning of the term "to stall." An accepted definition as given by Webster is: "In contests, to do less than one's best, as to deceive for any purpose or to husband strength." There is also another definition, "To delay or postpone payment of an obligation or debt." The word, however, has become current in vernacular, and in its generally accepted sense is accurately defined in the first reference and which might also include the latter given definition. We think that the word in common usage has a

shade of meaning somewhat broader than that embraced in either definition. When one states his intention to desist from "stalling" he expresses thereby a determination to forego further evasive argument and cut through all needless preliminaries and come direct to the subject or matter in hand. Therefore, this letter of December 11, 1918, said in just so many words, "When we learn how much the White Stores Co. have paid I will be glad to hear from you again. Please understand I have no desire to postpone or delay payment or to feign or simulate or frame up any defense to these notes, but I think that the amount you receive from the principal debtor or maker of the note should first be applied thereon before I as guarantor make any settlement."

It is urged by respondent that this letter of defendant being in reply to a letter wherein an offer of compromise was presented, was in itself, if anything, merely referring to such offer, and the term "settlement" should be construed accordingly. We think this construction would be too strict. While plaintiff had offered to accept less than the amount due, the defendant neither accepted nor rejected the offer, nor made any reference thereto. It must be borne in mind that the entire liability of defendant was as a guarantor. Though his contract or guaranty was a contract separate and distinct from the contract of the maker of the note, yet his liability was contingent upon and measured by the performance or nonperformance of the original obligation. The term "settlement" includes within it a little more than the term "payment." It includes an ascertainment of the balance and an adjustment of credits. Naturally it might be argued, then, that the acknowledgment was thus uncertain and not within the statute or the decisions cited. However, the obvious answer to this is that the liability of the guarantor was fixed, definite, and certain, leaving only the amount of money necessary to fully extinguish this liability to be determined by the extent of his principal's performance. There seems little room for doubt but that the liability was acknowledged, and settlement deferred only until exact amount was computed, coupled with disavowal of intent to unnecessarily defer. It is our opinion that plaintiff has brought himself within the statute.

The only dispute in this case was on the point of the statute of limitations. Execution and nonpayment are admitted.

Therefore there are no further issues found against plaintiff to warrant a new trial.

The judgment is reversed, with directions to enter judgment in favor of plaintiff for the face of the note less amount found paid thereon, namely, for the sum of $4,500 less $993.21, together with interest as in the note provided.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1927.