[Civ. No. 13339. Second Dist., Div. Three. July 31, 1942.]

EMMA A. STERLING, Appellant, v. TITLE INSURANCE & TRUST CO. (a Corporation), as Executor, etc., Respondent.

Geo. W. Rochester and Harry P. Bowman for Appellant.

H. Sidney Laughlin for Respondent.

SHINN, J.—Appeal by plaintiff from an adverse judgment in an action against defendant executor upon a rejected claim. Judgment went for defendant upon the ground that the promissory note which was the subject of the action was

barred by the provisions of section 337, subdivision 1, of the Code of Civil Procedure and sections 700, 702, and 707 of the Probate Code. The first section relates to the time for commencement of actions, the latter sections to the time for presentation of claims.

Plaintiff holds a note executed by decedent April 6, 1932, for $10,000; it was due March 16, 1933, and would have been barred March 16, 1937. The maker, Alice B. Sterling, later Alice Bolan Emery, lived in Beverly Hills, California, and plaintiff, payee of the note, at all times material to the case, lived in Pennsylvania. Alice Bolan Emery died in Los Angeles County March 11, 1939; defendant executor was appointed and qualified April 4, 1939, and on that date notice to creditors was first published, fixing October 8, 1939, as the last day for the presentation of claims against the estate. On the 24th day of April, 1940, plaintiff presented to the executor her claim, showing unpaid principal in the sum of $10,000 and unpaid interest in the additional sum of $2,880. The claim was rejected and this action was brought.

From the foregoing dates it will be observed that the note matured almost six years before the death of the maker and that action thereon would then normally have been barred for almost two years. It will be noted further that the claim was presented to the executor more than six months after the time limited for presentation of claims as stated in the notice to creditors. If, therefore, the operation of the statute of limitations was not interrupted, the claim was properly rejected by the executor upon the ground that the statute had run, and with reference to the presentation of the claim, if plaintiff's delay was not legally excusable it was properly rejected because it was presented too late.

■ Upon the first point plaintiff relies upon four letters written to her by the debtor, portions of which were pleaded in the complaint and proved at the trial and which were dated and read as follows:

"October 20, 1936. I am so sorry I cannot send you more money. I worry about it all the time, but if things come back like people think, I hope I will be able to sell that house and get you your money. You have been so nice about it. I can't tell you how much I appreciate it, but I assure you you get it all just as soon as I can manage it."

"December 15, 1936. Am enclosing a check for $25.00 and I am always ashamed to send it. You have been so

patient, that I am doing the best I can until I can sell some property which I hope will not be long now.''

"March 2, 1937. Mama Tade I feel terribly that I haven't been able to send you some money, but I have had the most awful time with that house, the people haven't paid any rent since November, and I had to go to court to have them put out and each time the day would come, they got a doctor's certificate that one of the children were ill and according to the law you can't evict them when there is sickness . . . but I will do the best I can to sell it as soon as possible so I can get you some money. I know you need it.''

"August 10, 1938. I am sorry I haven't been able to send you any money, but I just haven't got it. I have had to put a mortgage on the Walden house to pay my taxes, etc., that this fall I am going to put that Wilshire lot on the market and taking anything I can get for it and if I can sell it I will pay off part of that note.''

It will be observed that three of the letters were written prior to the expiration of the four-year period and one was written afterward. We shall consider the first three as a group. The conclusion we have reached as to the effect which should be given to them as acknowledgments of the debt renders it unnecessary for us to consider the fourth letter in that connection.

Upon this point three principal questions are discussed in the briefs: (1) do these letters constitute an acknowledgment of the debt so as to suspend the operation of the statute of limitations? (2) do the expressions in the letters constitute a promise of payment which should be recognized as a substitute for the original obligation? and (3) if the letters do express a new promise, was it a conditional one?

The first question is presented on the record as a clean-cut question of law. The second and third questions, while they are argued in the briefs, involve questions of law which were not raised at the trial and questions of fact which were only impliedly put at rest by the findings of fact.

The three letters, considered together, as they should be (*Searles* v. *Gonzalez* (1923), 191 Cal. 426, 432-33 [216 Pac. 1003, 28 A. L. R. 78]), amounted to an acknowledgment which lifted the bar of the statute of limitations and started it running anew, as of the date of the first letter, October 20, 1936, which was less than four years prior to the institution of this action. Section 360 of the Code of Civil Pro-

cedure reads as follows: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby." This section, which is the only one on the subject, has always been given affirmative effect as if it provided that an acknowledgment or promise in writing signed by the party to be charged thereby does take the case out of the operation of Title II of the Code of Civil Procedure relating to the time of commencing civil actions. ■ The sufficiency of an acknowledgment or promise as evidence of a continuing or new contract is a matter of judicial interpretation. The question is one of law. (*Concannon* v. *Smith* (1901), 134 Cal. 14, 20 [66 Pac. 40].)

■ The essentials of a sufficient acknowledgment have been frequently stated and were well expressed in *Southern Pacific Co.* v. *Prosser* (1898), 122 Cal. 413 [52 Pac. 836, 55 Pac. 145], at 415, as follows: "The distinct and unqualified admission of an existing debt contained in a writing signed by the party to be charged, and without intimation of an intent to refuse payment thereof, suffices to establish the debt to which the contract relates as a continuing contract, and to interrupt the running of the statute of limitations against the same; from such an acknowledgment the law implies a promise to pay." There was before the court in that case a letter reading as follows: "Dear Sir: Referring to that traction engine at Auburn, owned by me, and mortgaged to S. P. Co., I have not been able to sell it. . . . Now, sir, can't you give me a chance to pay you in work? The company employs many men, and, if you choose, you can procure some employment for me. I have a sick family and am hard up personally and need work and want to pay you besides. . . . W. S. Prosser." Of that letter the court said (p. 415): "The defendant contends that his said letter was nothing but an inquiry whether plaintiff would accept payment in work. We think it was more significant than this; as we read the document it was an unqualified admission of an existing debt which defendant desired to pay, and also a request for leave to pay in a manner more convenient to the writer than that provided in the original contract. . . . We have no doubt that the latter [(letter), see p. 419] interrupted the running of the statute as to the debt sued on."

The inquiry as to whether the three letters before us

amounted to a "distinct and unqualified admission of an existing debt" must take into account the fact that it was admitted by defendant's answer that the note was given, that no part of the principal had been paid, and that only the sum of $1,070 had been paid as interest. In other words, the letters must be construed as having been written by a debtor to a creditor holding a $10,000 note bearing interest quarterly and upon which the debtor was making periodic interest payments. A connection between the letter of December 15, 1936, and the note may be drawn from the fact that a $25 check was apparently enclosed with the letter and that the same amount was credited on the note December 21, 1936, as shown by schedule of interest payments alleged in the complaint and admitted by the answer. That the letters referred to a debt is clear from their general tenor, which is consistently one expressing an obligation of the writer to send money to the addressee which was due to the latter. The letter of October 20, 1936, speaks of sending "your" (plaintiff's) money and each letter makes mention of plaintiff's forbearance. The expression of this letter, "I can't tell you how much I appreciate it but I assure you you will get it all just as soon as I can manage it" was a distinct and unqualified acknowledgment of the debt and the letters throughout clearly negative any intent of the writer to refuse payment. That they referred to the debt evidenced by the note is sufficiently established. The letters mention periodic payments, at least one of which was identified circumstantially as a payment of interest on the note, and since it is not contended that there was any other debt owing by the writer to the addressee and there is no basis for assuming that there was one, it is to be inferred that all of the references were to the particular debt in question. Taken as a whole they were at least as definite and expressive as the acknowledgment held to be sufficient in *Southern Pacific Co.* v. *Prosser, supra.* Writings of similar import were held sufficient as acknowledgments and effective to start anew the running of the statute of limitations in *Bank of America etc. Assn.* v. *Hunter* (1937), 8 Cal. (2d) 592 [67 P. (2d) 99]; *Searles* v. *Gonzalez, supra,* (1923), 191 Cal. 426; *Concannon* v. *Smith* (1901), 134 Cal. 14 [66 Pac. 40]; *Weatherwax* v. *Hills* (1931), 113 Cal. App. 557 [298 Pac. 853]; and *First Nat. Bk. of Park Rapids* v. *Pray* (1927), 86 Cal. App. 484 [260 Pac. 933].

Respondent, in arguing the second and third questions above stated, singles out the fourth letter, written after the statute had run, and contends that it contained a promise conditioned upon the debtor's ability to sell certain real property which she owned. Upon this construction of the letter respondent invokes the rule stated in *Curtis* v. *City of Sacramento* (1886), 70 Cal. 412 [11 Pac. 748]; *Rodgers* v. *Byers* (1900), 127 Cal. 528 [60 Pac. 42], and cases therein cited, to the effect that where a new promise is made, the action must be upon that promise and not upon the original one, and that if the new promise is conditional, facts must be alleged and proved showing that the conditional liability has become absolute. Respondent then says: ''It would follow from the above that no matter how the four letters, or any of them, are construed, appellant's action must fail because not founded on the assumed new contract.''

We are in some doubt as to how these questions are presented by the record before us. When the letters were offered at the trial they were not objected to upon the ground that they constituted a new contract and that they were inadmissible because the claim had been presented on the original obligation, the note, and not upon the new contract; nor were they objected to upon the ground that the action was brought on the note and not on a substituted contract. There is no copy of the claim in the record but counsel would seem to be in agreement that the claim was presented on the note. That is the allegation of the complaint, which was admitted by the answer, and we must treat it to be the fact.

The finding that the cause of action was barred by section 337, subdivision 1, of the Code of Civil Procedure, must be construed as a finding that there was neither an acknowledgment of the debt nor a new promise, for if there had been either, the action would not have been barred, and the finding therefore must be construed as negating either a conditional acknowledgment or promise. If the trial judge had been of the opinion that there was either an acknowledgment or a promise that was conditional, the findings would have disclosed that fact and the question of variance would have arisen. But as that question was not raised at the trial it would seem that the defendant stood on the denials of its answer that there had been any acknowledgment or promise, conditional or otherwise. However, even though the point was not raised at the trial, it appears necessary for us to

examine it in order to make a complete disposition of the case upon this appeal.

The distinction between a new contract and a continuing contract recognized in section 360 of the Code of Civil Procedure was pointed out in *Southern Pacific Co.* v. *Prosser, supra,* (1898), 122 Cal. 413, at 417, where the court quoted from *McCormick* v. *Brown* (1868), 36 Cal. 180, 184 [95 Am. Dec. 170], "There are two ultimate facts that may be proved in the mode prescribed—a continuing contract, and a new contract. The acknowledgment or promise made while the contract is a subsisting liability establishes a continuing contract; and when made after the bar of the statute, a new contract is created."

As we read the first three letters there was no new promise, only an acknowledgment of an existing one. The strongest expressions used in any of them were no more than assurances that the money would be paid eventually and in part at least when the debtor should sell some property. The acknowledgment was unconditional and absolute. A promise sufficient to supplant the original one cannot be inferred from the fact that the debtor in making the acknowledgment also expresses hopes either as to time or manner of payment. The letters suggest no alteration of the original obligation nor any reluctance to pay as soon as possible. The references to the expected sale of real property were but a disclosure of the debtor's plans such as would commonly be found in such correspondence. Having in mind the distinction which the code recognizes between an acknowledgment and a promise, we should be careful not to place a construction upon the writings which would attribute to the debtor intentions not expressed therein. It is true that an express promise necessarily excludes a promise by implication (*McCormick* v. *Brown* (1868), 36 Cal. 180, 185 [95 Am. Dec. 170]), whereas a mere acknowledgment carries with it a promise furnished by the law. But as we have stated, we construe the letters as mere acknowledgments of the debt and the proper basis for an implied unconditional promise to pay the same.

Plaintiff, as an excuse for her failure to present her claim to the executor within the time limited by the notice to creditors or until about six months after that time had expired, relies upon the fact that she was a nonresident and had no notice of the giving of notice to creditors or of the time within which claims were required to be filed. This appears to be a

tenable position. Her nonresidence and the fact that she had no actual notice are admitted. (We shall refer to creditors who are out of the state as nonresident creditors solely for convenience and because plaintiff was not at any time within the state.) Alice Bolan Emery was her daughter-in-law, the widow of a son, and plaintiff learned of Mrs. Emery's death a few days after it occurred on March 11, 1939. She testified by deposition that she did not know prior to November, 1939, of the administration of said estate nor that an administrator had been appointed or notice to creditors given or that claims were required to be filed on or before October 8, 1939, and that she first became aware of the administration of the estate during the first part of 1940. She testified to a visit made to her by her granddaughter, Paula Sterling, a daughter of Mrs. Emery, in the latter part of August, 1939, and of having discussed with her the death of Mrs. Emery and she stated that she might have discussed the estate. Paula Sterling testified to the same visit and of discussing the money that Mrs. Emery owed plaintiff, but she testified to having told plaintiff and plaintiff's son that she knew nothing about the estate, which was being handled by her guardian in California.

Plaintiff also testified that her business was managed by her son, Harry E. Sterling, and the latter testified substantially the same as plaintiff and Paula Sterling as to conversations concerning Mrs. Emery and the debt in August of 1939. Defendant introduced two letters from Harry E. Sterling to defendant's attorney, dated respectively, January 22, 1940, and February 18, 1940, in the first of which he stated that he had just received word from the court in Los Angeles that the addressee was the executor of the estate; that he had given Paula Sterling a statement of the note to give to the executor but had heard nothing from them; that he had written to "both of the children asking for your address" but had received no reply; that plaintiff held a mortgage of $10,000 against the estate with interest. In the letter of February 18, 1940, he stated, in reply to a letter of the attorney dated February 2, that the money had been loaned to his brother James, deceased husband of Mrs. Emery, on a mortgage; that the property had been sold, the mortgage was to have been placed on another property, which plaintiff had always thought had been done, and that they were surprised to learn upon receiving a letter from the attorney that he knew nothing about this.

Under section 707 of the Probate Code, except in cases not material here, the failure to file a claim arising upon contract within the time limited in the notice bars the claim "unless it is made to appear by the affidavit of the claimant to the satisfaction of the court or a judge thereof that the claimant had not received notice, by reason of being out of the state, in which event it may be filed or presented at any time before a decree of distribution is rendered." It appears that an affidavit was made as required and that the claim was presented to the executor before a decree of distribution had been rendered.

It is defendant's position that a nonresident creditor, although without actual notice or knowledge of the publication of notice to creditors or of the time within which claims must be filed as limited by the notice, is nevertheless bound by the limitation and will be deemed to have had notice if he has received "any timely knowledge or information which, if inquiry were pursued by such creditor, would lead to a full disclosure of the fact." Assuming that this rule applies, defendant asserts that as plaintiff was informed of the death of Mrs. Emery shortly after it occurred, she was put on notice that there would be probate proceedings; that a notice to creditors would be given; that the time for the presentation of claims would be limited; and that if she had made proper inquiry she would have learned that the time for presentation of claims would expire October 8, 1939, and that therefore she must be deemed to have had notice as effectually as if she had at all times been a resident of California.

Section 19 of the Civil Code reads as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." This is but a statement of a principle long recognized by the courts and text writers. But we think it cannot be so applied to the case of a nonresident creditor as to cut off his right to present his claim at any time before distribution if he is without actual knowledge as to the time for presentation of claims as limited by published notice to creditors. In *Cullerton* v. *Mead* (1863), 22 Cal. 95, the plaintiff creditor was absent from the state during all of the time when notice to creditors was being published and for about seven months after the date of the first publication. He then returned to California

and learned of the death of his debtor but was ignorant of the appointment of an administrator and of the publication of notice to creditors, which he had never seen. As the law then stood, some three months remained after he learned of the death of the debtor within which he might have presented his claim. He was informed of the limited time shortly after it had expired and then presented his claim, which was rejected because it was filed too late. The law at that time required the giving of notice to creditors and the rights of claimants who had received no notice by reason of being out of the state did not differ in substance from their rights as specified in section 707 of the Probate Code which we have quoted. In reversing a judgment for the defendant on demurrer, the court held that since plaintiff had been absent from the state during the entire five weeks in which weekly publication had been made and had no actual notice of the time stated in the notice for filing claims, he came clearly within the exception of the statute and had the whole time up to the decree of distribution in which to present his claim for allowance. The court said (p. 99): "The fact that he returned to the State before the ten months expired can make no difference, for the law had extended the time for presenting his claim, he being absent from the State, during the time of publication. The law will not presume that immediately upon his return he had notice of a publication in a newspaper months before, and if he had had actual notice of the fact of publication, he had only to look at the law, when he would find that the time was extended in his case." And of the statute the court said (p. 98): "This is a remedial statute, and it must therefore be construed liberally, and when the meaning is doubtful, it must be so construed as to extend the remedy."

In *MacGowan* v. *Jones* (1904), 142 Cal. 593 [76 Pac. 503], a claim was held to be barred where the claimant was within the state at the time of the first two publications of notice to creditors, then left the state and later returned and more than one month before the time for presenting his claim had expired received actual notice that the administrator had published notice to creditors. The court said (p. 595): "The facts in *Cullerton* v. *Mead*, 22 Cal. [95] 96, upon which plaintiff relies, were widely at variance from those here presented. . . . In the Cullerton case, therefore, the plaintiff was not only absent from the state during the time of publication, but received no actual notice or knowledge of the fact that publication had

been made until after the time for the presentation of the claims had expired,—a very different case from that where plaintiff, being the attendant physician, knew of the death of deceased, was present in the state during the first two publications, returned to the state, and had actual notice of the publication for more than one month prior to the expiration of the time for filing his claim, and still neglected to do so until long after that date.'' The MacGowan case is the only one we have found which refers to *Cullerton* v. *Mead, supra.* It is a significant fact that the doctrine of the Cullerton case has been accepted for 80 years as the law in the application of statutory provisions which have stood for that period without substantial change, during which time the entire wealth of the state subject to administration has passed through the probate courts at least once and the greater share of it several times. It is true that in the Cullerton case the court did not discuss the rule of constructive notice as declared by section 19 of the Civil Code, although as appears from the facts in that case, the claimant had actual knowledge of the death of his creditor some three months before the last day for presentation of his claim.

Defendant has cited to us the case of *State Bank of Seneca, Mo.,* v. *Miller* (1935), by the Supreme Court of Oklahoma, reported in 171 Okla. 253 [42 P. (2d) 834]. There judgment was rendered on a verdict in favor of defendant in a suit by a nonresident creditor on a claim which had been rejected because presented too late. The evidence was held sufficient to prove that the nonresident creditor had actual notice of the giving of notice to creditors and this was held to be a proper basis for the verdict. In the opinion, which is shown to have been prepared by a committee of the State Bar, appointed by the Judicial Council and approved by the Supreme Court, and which opinion was adopted by the Supreme Court, there is dictum to the effect that the rule of constructive notice applied to the case of a nonresident creditor of a decedent under a statute which probably resembled in some respects our own. We are not inclined to follow this doctrine, especially in view of the fact that the careful research that appears to have been made in the preparation of the opinion seems to have disclosed no authoriy for the proposition.

The cases within our own state where the Civil Code section has been applied are legion. In attempting to apply the rule to the facts of the instant case defendant overlooks one

important feature, namely, that before a party having notice of facts sufficient to put him on inquiry will be charged with implied notice of the material facts which a diligent inquiry would have disclosed, the situation must be one which imposes upon him a duty to pursue the inquiry. The situations where inquiry is called for are too many to enumerate but a few of them may be noted by way of example. There is a special duty on the part of officers and directors of corporations to keep themselves advised as to the manner in which the corporate affairs are conducted and upon stockholders to inform themselves of actions taken at stockholders' meetings; there is a duty on the part of one dealing with an agent known to have limited authority, to inquire as to the extent of his authority. A common situation is one where conflicting property rights are involved, and of these Mr. Pomeroy says (Pomeroy's Equity Jurisprudence, Vol. 2, fourth edition, p. 1154, § 608), ''Whenever a party has information or knowledge of certain extraneous facts, which of themselves do not amount to, nor tend to show, an *actual* notice, but which are sufficient to put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim, or right, *and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth,* to a knowledge of the interest, claim, or right which really exists, then the party is absolutely charged with a constructive notice of such interest, claim, or right.'' Another familiar situation is where one who claims to have been defrauded becomes aware of facts sufficient to reasonably arouse a suspicion that a fraud has been committed and is thereby placed under a duty to institute an inquiry for the truth. Still another case is one in which stockholders of corporations are charged with a duty to make inquiry as to alleged breaches of duty on the part of the management when their attention is called to circumstances reasonably suggesting acts of malfeasance.

In *Tarke* v. *Bingham* (1898), 123 Cal. 163 [55 Pac. 759], at 166, the court, after quoting section 19 of the Civil Code, said: ''But the converse of the proposition is equally true. Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must

be such that the inquiry becomes a duty, and the failure to make it a negligent omission.''

The foregoing illustrations are sufficient to show the reason which underlies the rule of implied notice. It will be found invariably that where the doctrine of implied notice is applied, the party chargeable with notice has had a specific duty to perform which required him to inform himself of pertinent facts or has had a right involved, the protection of which has required that he proceed with diligence and as a person of reasonable prudence would proceed to ascertain the facts affecting his right. It may be said generally that the doctrine applies only to situations in which failure to make inquiry would amount to dereliction of duty or a failure to take ordinary care of one's own concerns. It cannot be applied to the conduct of nonresident creditors of decedents so as to require them to inform themselves as to steps that have been taken to give notice to creditors. They are presumed to know the laws of California. They have an absolute right to present their claims at any time before a decree of distribution is rendered, except in the single event that they have received actual notice of the terms of the statutory notice required to be given to creditors. Having an absolute right to present their claims within the longer period of time, they are under no duty to make inquiry as to facts which, when brought to their knowledge, would limit the time within which they must act. They have a right to rely upon their lack of knowledge. A nonresident creditor who learns of the death within this state of his debtor may stand upon his right to present his claim at any time before distribution, unless he has actual notice of the fact of which creditors in the state have constructive notice by the publication and is not obliged to inquire whether notice to creditors has been given nor as to a limitation of time prescribed thereby, and if he is under no duty to make such inquiry the law charges him with no notice of facts which would have come to him through an inquiry. Unmeasured uncertainty in the duties of personal representatives and the court in probate in the allowance and approval of claims would result should section 707 of the Probate Code be so construed as to place nonresident creditors who receive knowledge of the death of their debtors under the same limitations as are prescribed for the presentation of claims by resident creditors, who are conclusively presumed to have knowledge of the facts stated in the notice to creditors. We conclude therefore that plaintiff's claim was presented in time.

Defendant's answer admitted all of the material allegations of the complaint, although it contained denials of allegations that there are "now due, owing and unpaid from said decedent and estate of said decedent to the plaintiff herein" the alleged sums of principal and interest. In view of the admission of the execution of the note and nonpayment of the principal or of any more than $1,070 interest, no issue of fact was raised by the denials. The special defenses presented the only issues to be tried, and since they have been held to be untenable, nothing remains to be done in the trial court but to enter judgment in favor of plaintiff for the principal of the note and the unpaid interest.

The judgment is reversed with directions that judgment be entered for plaintiff for the sum of $10,000, with interest as provided in the note, giving credit for sums paid as interest as alleged in the complaint, the same to be payable in due course of administration.

Schauer, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 28, 1942.