Filed 6/26/13  County of San Diego v. Lumbermans Mutual CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COUNTY OF SAN DIEGO, | |
| Plaintiff and Appellant, | G046970 |
| v. | (Super. Ct. No. 30-2010-00363666) |
| LUMBERMANS MUTUAL COMPANY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Affirmed.

Thomas E. Montgomery, County Counsel, Thomas Deák, Deputy County Counsel, for Plaintiff and Appellant.

Booth, Mitchel & Strange, Craig E. Guenther and Stacie L. Brandt for Defendants and Respondents.

\*          \*          \*

San Diego County (the County) appeals from a judgment in favor of Lumbermans Mutual Casualty Company and American Motorists Insurance Company (collectively the sureties) following the trial court's order granting the sureties summary judgment. The sureties wrote completion bonds on a number of street and other improvements that were ultimately not completed by the developers of a subdivision. The County did not bring this action until more than four years had passed since the expiration of the developers' final extension. Thus, the sureties argued, the statute of limitations had expired. The County now appeals, arguing the sureties either made a new promise to satisfy the bonds, or alternatively, that the time to complete the improvements was extended, and thus the bonds remained in effect. The sureties respond that the writing the County relies upon expressly disclaimed any further obligation, and the purported extension was not lawfully enacted under the County's own ordinances. As we shall discuss, the sureties are correct, and we therefore affirm.

I

FACTS

In 1989, a draft environmental impact report (the EIR) for a San Diego subdivision called The Pointe was completed. The Pointe was proposed as a mixed-use development project, including approximately 900 homes, a resort and golf course, and commercial facilities. The draft EIR concluded that the development would cause significant traffic impact, including traffic on a two-lane road called Jamacha Boulevard. The EIR proposed mitigation measures, including the widening of Jamacha Boulevard.

In June 1990, the San Diego County Board of Supervisors (the Board) approved a tentative subdivision map. As a condition of the approval, the developers were required to complete a number of specified road, water and sewer improvements, comprising approximately seven pages of the Board's resolution. In February 1992, the Board approved the final map, although the required work had not been completed.

2

Shortly thereafter, the County and The Pointe's developers entered into three agreements, in which the developers promised to complete improvements required by the final map. The Streets Improvement Agreement, the Water Improvements Agreement, and the Sewer Improvements Agreement (collectively the improvement agreements) were subsequently executed by the parties. The improvement agreements, pursuant to Government Code § 66499.1, required the developers to furnish surety bonds to secure their performance. Accordingly, Lumbermans Mutual Casualty Company issued a bond for completion of the street improvements, and American Motorists Insurance Company (American Motorists) issued a bond for completion of the water and sewer improvements. All of the bonds issued on March 2, 1992.

In 1996, The Pointe was transferred to new developers. Between 1994 and 2003, the Board extended the time for completion (which had originally been 730 days from the approval of the final map) on several occasions.

During this period, in February 2000, representatives of the sureties, the County, and the developers met to discuss ways to fund the needed work. In 2001, the County asserted claims against all three bonds. In January 2002, the County, the developers, and American Motorists entered into a tri-party agreement under which American Motorists deposited an agreed-upon amount (approximately $2.46 million) to pay for specified improvements. American Motorists' bond obligation was accordingly reduced by the same amount.

In 2003, the County gave the developers a final extension, which expired on January 29, 2005. In April 2005, the County notified the developers that they were in default. Meanwhile, the traffic situation on Jamacha Boulevard was dismal, with increased accidents and a traffic level of service grade of "F" (apparently the worst possible grade). Work on the improvements funded by the tri-party agreement was approved in 2004, but by September 2005, the County notified the developers that the

3

funds deposited by American Motorists were no longer sufficient. The amount needed to complete the work was approximately $500,000.

The County and the developers eventually entered into discussions regarding an amended agreement. While discussion regarding the amended agreement was taking place, the sureties were aware of the ongoing issues. At one point, the sureties seemed surprised that they had any potential liability remaining on the bonds. The developers told the sureties an amended agreement had been prepared, and the sureties' chief surety counsel, Stephen Beatty, responded that it had been forwarded to outside counsel for review. Beatty also posed a number of questions, and then stated: "After further review on my part, and by my counsel, it is likely that there will be other questions that will need to be addressed. I trust, however, that you realize that due to the nature of this matter and what is involved, the Surety needs to have a full and complete understanding of what has transpired, and what is intended by any agreement to which it is being asked to become a party."

The developers responded and addressed Beatty's questions. Discussions apparently continued, and the developers eventually forwarded Beatty "a revised agreement that has been modified to include just the County and The Pointe." The developers agreed once again to complete the needed improvements, and under the amended agreement, the street improvements bond was to remain in effect. Beatty was asked to advise the County that it was aware of the amended agreement and did not have any objections. Beatty responded: "I've looked at the revised agreement. Since the revised agreement deals with the circumstances between the County and Pointe Builders, and does not otherwise alter the rights or extend the obligations of the Surety, I have no objections to it." The sureties did not sign the amended agreement, which was executed in November 2006.

By April 2007, all work had once again stopped, and the developers no longer planned to proceed with improvements. Between December 2007 and September

4

2009, numerous meetings were held between the County, the developers, and the sureties. The parties were unable to resolve matters, and on September 22, 2009, the County filed the instant lawsuit against the sureties for breach of contract, breach of bond, and declaratory relief.

In January 2012, the sureties moved for summary judgment, arguing that the four-year statute of limitations in Code of Civil Procedure section 337, subdivision (1), barred any claim against the bonds. They contended that any cause of action accrued when the improvement agreements expired on January 29, 2005. In opposition, the County argued the tri-party agreement extended the time for performance, equitable estoppel, and equitable tolling. After a hearing, the court rejected these arguments and granted summary judgment. Judgment was subsequently entered. The County now appeals.

II

DISCUSSION

A.  *Standard of Review*

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citations.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The trial court properly grants a motion for summary judgment if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie

5

showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

"We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

## B. The Sureties' Prima Facie Case

The sureties' argument is fairly simple — they assert this action is barred by the statute of limitations. Under Code of Civil Procedure section 337, subdivision (1), an action upon an obligation in writing must be filed within four years from the time it accrues. This limitation has been held to apply to surety agreements. (*County of Los Angeles v. Security Ins. Co.* (1975) 52 Cal.App.3d 808, 816-817.) Here, the sureties argue, the County's last extension expired on January 29, 2005. Thus, the statute of limitations began running on that date, and expired four years later, on January 29, 2009. This action was filed on September 22, 2009.

The County does not dispute the dates in question or the applicability of a four-year statute of limitations. "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 851.) We find the sureties met their burden and produced evidence sufficient to establish their prima facie case.

## C. The County's Burden of Production

Because the sureties set forth a prima facie case, the burden then shifted to the County to establish a triable issue of material fact. "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the

6

applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) The County offers two arguments, which we consider separately.

### 1. New Promise

The County's first argument is that the sureties made a new promise to satisfy their obligations, relying on the amended agreement and the circumstances surrounding its negotiation and execution. To the extent the County relies on the amended agreement itself, their argument is unpersuasive. Surety agreements are subject to the statute of frauds and must be in a writing signed by the surety. (Civ. Code, § 1624, subd. (a)(2).) The sureties did not sign the amended agreement and therefore cannot be bound by the contract itself.

The County also looks to the principle that where a prior contractual obligation has become unenforceable, a new promise to satisfy the prior obligation is binding. It asserts that all that is required is that the writer treat the obligation as subsisting and as one the debtor is willing to pay. (*Van Cauteren v. Forger* (1941) 45 Cal.App.2d 388, 392.) The County points to Beatty's statement that "I've looked at the revised agreement. Since the revised agreement deals with the circumstances between the County and Pointe Builders, *and does not otherwise alter the rights or extend the obligations of the Surety*, I have no objections to it," as evidence of a renewed promise by the sureties. (Italics added.)

We disagree with the County that this statement, written in correspondence, is sufficient by operation of law to begin the clock anew on the statute of limitations. The County's authority on this point is inapposite. Unlike the situation in *Sterling v. Title Ins. & Trust Co.* (1942) 53 Cal.App.2d 736, there is no "'distinct and unqualified admission of an existing debt'" (*id.* at p. 741) here. At best, and taken together with the other relevant correspondence, the sureties were only acknowledging the *possibility* of liability. Such liability did exist at the time, because in 2006 the statute of limitations had not yet run. Further, the County's argument ignores that Beatty's statement expressly disclaims

7

any intent to "alter the rights or extend the obligations of the Surety," although it seeks to use this statement to do exactly that. A statement expressly disclaiming any intent to alter or extend a party's obligations is insufficient, as a matter of law, to create a new legal obligation and therefore recommence the running of the statute of limitations. To hold otherwise would turn the doctrine of "'distinct and unqualified admission of an existing debt'" (*ibid.*) completely on its head.

2. *The Amended Agreement*

The County next argues the amended agreement extended the time to perform and the sureties consented to the extension. If the County and the developers were operating under a legal extension, the sureties would be bound by the following language used in each of the surety agreements, which is nearly identical to the language of Government Code § 66499.1: "Surety hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the Agreement to Improve or to the work to be performed thereunder or the specifications accompanying the same shall in anywise affect its obligations on this surety bond, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of the Agreement to Improve or to the work or to the specifications." The County argues, therefore, that the amended agreement "implicitly extended the time" to complete the improvements, and the sureties consented in advance.

As the sureties point out, however, San Diego County Code Section 81.403.1[1] explicitly addresses the procedure to obtain extensions of time to complete required work pursuant to the approval of subdivision maps. It states: "Where the subdivider agrees to install the required public improvements pursuant to Section 81.403,

---

[1] This section has since been amended and is now San Diego County Code Section 81.709. The County does not dispute the older version was in effect at all times relevant here. In any event, the current version also requires the Board to grant extensions beyond two years.

the agreement shall provide that the public improvements shall be completed within two years following recordation of the map.  The time for completion of the public improvements may be extended once, for no more than two additional years, by the Director of the Department of Public Works. . . .  The Board of Supervisors, however, . . . may grant additional time extensions, on a case-by-case basis, as it deems appropriate, for completion of public improvements pursuant to agreements secured either by (i) security provided at the time of recordation of the map, or (ii) security substituted for the original security furnished under Section 81.406."

The sureties argue that because the Board never granted an extension, any "implicit" agreement could not continue their bond obligations.  We agree.  The terms of these bonds are statutory, tracking the language in Government Code section 66499.1 nearly word for word.  The only reasonable meaning of the phrase "extension of time" in the language of the bonds is an *authorized* extension of time, duly permitted by law, which in this case is San Diego County Code Section 81.403.1.  (See *Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 651 ["we must interpret a contract in a manner that is reasonable and does not lead to an absurd result."].)  Interpreting the phrase "extension of time" to mean any extension of time, even if that extension is granted in a manner that defies the relevant local law, would indeed be absurd.  The bonds at issue here are creatures of statute, and the County offers no argument as to why the bonds should not be interpreted according to their terms.

The County also argues that because the developers "received the benefits of the Amended Agreement, it may not now assert the agreement was invalid because [it] was not approved by the Board of Supervisors; [the developers are] bound by the agreement."  This may be true, but it is not the developers who are the relevant parties here, but the sureties.  The sureties did not sign the amended agreement, indeed, they expressly declined to do so.  They did not receive any benefits under the amended agreement.  They are therefore not estopped from arguing that the amended agreement

9

was invalid to function as an "extension of time" under the surety agreements, because the amended agreement was not accompanied by Board action. The County is a sophisticated actor, certainly with respect to the requirements of its own ordinances, and it offers no reasoning as to why Board approval was not obtained. There are simply no facts here that would justify restarting the clock on the statute of limitations.

The County has failed to present evidence of a triable issue of material fact to demonstrate the statute of limitations does not bar this action. Summary judgment, therefore, was properly granted.

## III

## DISPOSITION

The judgment is affirmed. The sureties are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

10