[14456. Department One. — May 30, 1893.]

CHARLES HANSON, APPELLANT, v. HENRY B. SLAVEN, RESPONDENT.

98 377
111 408
98 377
119 102

OPTION UPON STOCK — AGREEMENT TO SELL — MUTUAL AGREEMENT UPON ACCEPTANCE — DEPENDENT CONDITIONS. — A written instrument in the form of a letter, by the terms of which the parties signing it grant to the person addressed the privilege of calling for all or any part of two thousand shares of stock at any time within two years thereafter, at thirty dollars per share, constitutes, under section 1727 of the Civil Code, an agreement of the signers to sell the stock, or any part thereof, at the price stated, to the person addressed, at any time within two years; and upon an acceptance by the person addressed at any time within the two years, becomes, under section 1729 of the Civil Code, an agreement to sell and buy, containing concurrent conditions mutually dependent upon each other.

ID. — TENDER OF PURCHASE-MONEY — FAILURE OF ACCEPTOR OF OPTION — BREACH OF CONTRACT — DEFAULT OF SELLER. — An acceptance of the offer to sell upon the part of the party holding the option to purchase, without an offer of payment of the purchase price, does not place the seller of the stock in default so as to give the acceptor a right of action for a breach of contract, unless the conduct of the seller was such as to excuse the failure of an offer of payment.

ID. — CONSTRUCTION OF CODE — CONCURRENT CONDITIONS — OFFER OF PERFORMANCE. — Section 1349 of the Civil Code, which provides that "before any party to an obligation can require another party to perform any act under it, he

must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party," is applicable to obligations arising upon agreements for the sale of personalty, as well as of realty; and under such section, in order that one party may place the other in default upon a contract consisting of mutually dependent obligations, he must not only be able to perform but must offer to perform.

ID. — WAIVER OF OFFER OR TENDER — REFUSAL TO PERFORM. — In order to constitute an implied waiver of an offer or tender by refusal of the other party to perform his promise, there must be a distinct and unequivocally absolute refusal to perform the promise, which must be treated and acted upon as such by the party to whom the promise was made.

ID. — PROMISE OF FUTURE PERFORMANCE. — A promise to deliver stock at a future day, when notified of acceptance of an option under an agreement to sell it, indicates a willingness to deliver it, and cannot be construed into a refusal to do so.

ID. — EXCUSE OF TENDER — WAIVER BY INABILITY TO PERFORM — HYPOTHECATION OF STOCK. — The person accepting the option to purchase the stock, under the contract, was not excused from tendering the purchase-money, on the ground that the seller of the stock had placed it out of his power to deliver it, merely because he had hypothecated it and could not then deliver the shares pledged, where it appears that at that time large amounts of the stock were for sale, and any reasonable amount thereof could be purchased for the price of the shares agreed to be sold.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Philip G. Galpin,* and *Galpin & Zeigler,* for Appellant.

The contract of sale was complete as soon as the plaintiff notified the defendant that he would take the stock. (1 Parsons on Contracts, 403–405; Benjamin on Sales, 497, 498; *Morton* v. *Lamb,* 7 T. R. 125; *Smith* v. *Lewis,* 26 Conn. 110; 2 Smith's Lead. Cas. 28; *Haunnie* v. *Goldner,* 11 Mees. & W. 849; *Granger* v. *Dacre,* 12 Mees. & W. 431; *Coonley* v. *Anderson,* 1 Hill, 519.) The refusal and neglect of the defendant to deliver the stock when demanded exonerated the plaintiff from the obligation to pay the money before bringing suit. (*Cutter* v. *Powell,* 2 Smith's Lead. Cas. 28, note; *Houghton* v. *Steele,* 58 Cal. 421; 2 Benjamin on Sales, 5th ed., 743; *United States* v. *Peck,* 102 U. S. 65; Addison on Contracts, 48; *Fleming* v. *Gilbert,* 3 Johns. 527; 2 Phillips on Evidence, Cowen & Hill's notes, 105, note 298; Civ. Code, secs. 1440, 1515; *Blewett* v. *Baker,* 58 N. Y. 612; *Wheeler* v. *Garcia,* 40 N. Y. 584; *Currie*

v. *White*, 45 N. Y. 823.)   Evidence of waiver is competent to support an averment of tender.   (*Holmes* v. *Holmes*, 9 N. Y. 525.)   The plaintiff had the right to go to the jury on the question whether the stock was beyond the control of the defendant at the time of demand.   (Leake's Law of Contracts, p. 870 ; *Wolf* v. *Marsh*, 54 Cal. 229 ; Bishop on Contracts, 690 ; *Finch* v. *Brook*, 1 Bing. N. C. 253 ; 2 Greenleaf on Evidence, sec. 603 ; Wells on Questions of Law and Fact, sec. 74 ; *Wheelden* v. *Lowell*, 50 Me. 499.)   The decision below was undoubtedly founded upon decisions in regard to the equity action to compel specific performance of contracts to convey real estate, but they have no application to suits at law to recover damages only for breach of contracts of sale of personal property.   (*Coonley* v. *Anderson*, 1 Hill, 519, 524 ; *Merrill* v. *Merrill*, 95 Cal. 334.)

*Creed Haymond, E. L. Craig, W. C. Belcher,* and *E. P. Cole,* for Respondent.

The plaintiff did not exercise his option within the time limited in the contract or at all, and is therefore not entitled to recover.   (Civ. Code, secs. 1550, 1565, 1581, 1585, 1727, 1729.)   An offer to pay the purchase-money made within the two years was necessary to entitle the plaintiff to recover.   (Civ. Code, secs. 1439, 1487–1497 ; *Savings & Loan Soc.* v. *Hildreth*, 53 Cal. 721 ; *Englander* v. *Rogers*, 41 Cal. 420.)

GAROUTTE, J. — This is an appeal from a judgment of non-suit in an action brought to recover the sum of one million, two hundred and seventy thousand dollars as damages for a breach of contract to deliver two thousand shares of stock of the American Contracting and Dredging Company of New York City.   The contract was executory and in the following words : —

"SAN FRANCISCO, June 10, 1882.

"CHARLES HANSON, ESQ.—*Dear Sir:*   We hereby agree to take and pay for the amount of stock subscribed by you, namely : two thousand shares at thirty dollars per share, in a company now being organized, and to be known as the American Contracting and Dredging Company of New York City.

"We further grant you the privilege of calling for all or

any part of said two thousand shares at any time during the next two years from the date of this letter, at thirty dollars per share.                     Respectfully yours,

"H. B. SLAVEN,

"M. A. SLAVEN."

The latter portion of the writing forms the basis of plaintiff's cause of action, he claiming to have been damaged by reason of the failure and refusal of respondents to deliver the stock as therein provided.

The motion for a nonsuit was based upon very narrow grounds — grounds that could well have been enlarged. It was made upon the ground that plaintiff had failed to prove the payment or tender of the purchase price of said stock, to wit, sixty thousand dollars mentioned in the option, within the time therein stated, to wit, two years from date, and there was no waiver of such tender or excuse for the making of the same.

The evidence bearing upon the question of nonsuit may be summarized as follows: Robert F. Pratt, who had charge of certain branches of Slaven's business, testified: "In January, 1883, Hanson called me into his private office and said: 'I want my stock, you tell H. B. Slaven I want my stock.' I said, 'All right, H. B. Slaven is in town, and I will report to him just what you say'; and I did report the conversation to Slaven, who said: 'Tell good friend Hanson that he will get his sto·k; our stock is all hypothecated, tied up. As soon as we are free I will give him his stock.' In March Hanson again asked me for his stock, but he never tendered me any money at any time. I told Hanson what Slaven said about it." Plaintiff Hanson testified: "I told Slaven in December, 1882, I wanted the stock, and he said he would get it for me, but he never did. I told him again in February that I wanted the stock, and he said he would get it for me. I never tendered any money to Slaven at any time, never offered to pay him any — either in writing or otherwise — never at any time tendered any money to Pratt or to any person; never offered to pay any person any money for this stock."

That portion of the writing involved in the consideration of this case constitutes, under section 1727 of the Civil Code, an agreement upon the part of the Slavens to sell to Hanson two

thousand shares of stock, or any part thereof, at the price stated, at any time within two years from date. If at any time within the two years Hanson accepted the Slavens' proposition as stated in their agreement, then the contract, under section 1729 of the code, became an agreement to sell and buy, containing concurrent conditions mutually dependent upon each other.

Taking a broad and liberal view of the testimony cited, it may be fairly construed to constitute a notification to the Slavens by Hanson of an acceptance upon his part of the offer to sell previously made by them. His testimony as to his statements made to Slaven is a little more explicit than his demands and claims made through the medium of the witness Pratt; but in neither case did he state that he would take the entire two thousand shares. His option extended to all or any part, and it would seem but fair to the vendors that they should know the exact amount he elected to buy. Still, we pass the point, conceding it to be a fair inference of fact from the evidence that his acceptance extended to the entire amount.

We then have an agreement upon the one part to sell to Hanson two thousand shares of stock, and an agreement upon the part of Hanson to pay therefor to the Slavens the sum of sixty thousand dollars. Upon this state of facts let us see wherein lies plaintiff's cause of action for a breach of the contract. Section 1349 reads: "Before any party to an obligation can require another party to perform any act under it . . . . he must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party, except as provided by the next section." This section is equally applicable to obligations arising either upon agreements for the sale of realty or personalty, and the authorities both before and since the adoption of the codes recognize that fact. It follows therefrom, in order that one party may place the other party in default upon a contract consisting of mutually dependent obligations, he must not only be able to perform, but must offer to perform. If he is able to perform and offers to perform, he has done his part, and a refusal to accept such offer and thereby meet him half-way creates a breach of the contract, and gives an immediate right of action. Whatever courts of other states may have held upon this question, the provisions of our code

are plain and explicit, and demand that an offer of performance
be made. (See sec. 1485, Civ. Code, et seq.) In *Englander* v.
*Rogers*, 41 Cal. 422, it was held that a complaint which stated
that the plaintiff was "ready and willing" to perform, failed
to state a cause of action, as it showed no default upon the
part of the defendant, the complaint failing to allege a tender.
In *Stockton Saving & Loan Soc.* v. *Hildreth*, 53 Cal. 721, the
complaint was held fatally defective in failing to allege an offer
to perform. In this case the plaintiff testified that he made no
offer to perform; that he made no offer to pay the sixty thou-
sand dollars, and that was the concurrent condition assumed by
him under the contract.

Plaintiff having failed to make an offer of payment of the
sixty thousand dollars has no cause of action for a breach
thereof, unless the defendant's conduct was such as to excuse
the failure of an offer. As showing such excuse appellant con-
tends: 1. That respondent refused to deliver the stock; and
2. That he had placed it out of his power to deliver it. All
the evidence in the record tending to show a refusal to deliver
is the evidence of the witness *Pratt*, wherein Slaven said to him,
in answer to a request or demand for the stock from Hanson,
"Tell good friend Hanson that he will get his stock. Our
stock is all hypothecated, tied up. As soon as we are free I
will give him his stock." Under no recognized principle gov-
erning the construction of language can this statement of Slaven
be construed into a refusal to deliver the stock. It was a prom-
ise to deliver the stock at a future day, and indicated a perfect
willingness to deliver it. The authorities all agree that in order
to constitute an implied waiver of an offer or tender, the refusal
must be explicit and positive. In the latest edition of Mr.
Benjamin's work on Sales, it is said in section 568: "It must
be a distinct and unequivocally absolute refusal to perform the
promise, and must be treated and acted upon as such by the
party to whom the promise was made, for if he afterwards
continue to urge or demand compliance with the contract, it is
plain that he does not understand it to be at an end"; and this
language is approved in *Smoot's Case*, 15 Wall. 36. We have
in the present case no such refusal as is contemplated by the
law, and plaintiff's requests for his stock, made subsequent to

the foregoing statement of Slaven, and Slaven's promise to deliver the stock, made subsequent to this statement, clearly indicate that neither party regarded Slaven's language at this time as constituting a refusal. When Hanson was told by Pratt what Slaven said in reference to the matter, he appears to have made no objection to Slaven's plea for an extension of time in which to make the delivery, and in the absence of any objection upon his part at that time to a failure of present delivery, his assent to the course proposed by Slaven must be assumed. To be sure, subsequently he made further demands for the stock of the witness Pratt, but nothing is disclosed by the record to indicate anything in the nature of a refusal to have followed from such demands.

Neither is the evidence sufficient to support a finding of the jury that defendant had placed it out of his power to deliver the stock. It appears that during these times large amounts of the stock were for sale. The stock was plentiful, but buyers few, and the whole record indicates, conceding that the stock was then held by third parties as collateral, that an offer of thirty dollars per share would have brought to the possession of Slaven any reasonable amount of it for purposes of sale at that figure. For these reasons it is not shown by the record that the defendant was unable to comply with the contract. Upon the facts of this case it becomes unnecessary to determine by a construction of the writing whether an offer to perform should be made within the two years referred to in the writing, or whether Hanson did not have a reasonable time from the date of his acceptance of the terms of the contract in which to make the offer, as his testimony disclosed that he made no offer at any time.

For the foregoing reasons let the judgment be affirmed.

HARRISON, J., and PATERSON, J., concurred.

Hearing in Bank denied.