[Civ. No. 15296. Second Dist., Div. Three. Sept. 23, 1946.]

E. J. THOMPSON et al., Plaintiffs and Respondents, v. RAOUL WALSH et al., Appellants; SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, (a National Banking Association), Defendant and Respondent.

Freston & Files for Appellants.

Warren E. Libby for Plaintiffs and Respondents.

Roane Thorpe for Defendant and Respondent.

SHINN, J.—Defendants appeal from a judgment of specific performance, directing them to transfer to plaintiffs a residential property, together with certain furniture and furnishings thereof, upon payment of the sum of $65,000. Appellants in their defense alleged that no sufficient agreement of sale had been entered into, and this defense raises the sole question for decision upon the appeal. The action was tried upon a stipulation as to the controlling facts.

The writings to be examined in deciding the question of the sufficiency of the agreement, and which the trial court held to be sufficient, are the following:

(a) A writing dated April 16, 1943, by which defendants listed their property with a broker for sale unfurnished at a price of $59,500, or for rent furnished at $750 per month.

(b) A writing dated August 4, 1943, listing the property for sale furnished for $65,000, and enumerating certain items of furniture and furnishings reserved by the owners.

(c) (Referred to as Exhibit C.) A receipt dated August 10, 1943, signed by the broker, acknowledging a deposit of $5,000 by plaintiffs on account of the purchase for $65,000 cash, and stating, ''The above price is to include all furniture, furnishings, floor coverings and window draperies now on and in the premises excepting all prints in bar room and upstairs sitting room, also screen with prints in upstairs sitting room, dresser in front bedroom, large round table con. in living room, secretary in living room and all silverware and 8 piece coffee set on said table & 4 silhouettes on living room walls.'' The writing further read, ''Subject to the approval of the Buyer of a report from a licensed termite control company showing the property to be free & clear of termites & dry rot. The seller agrees to leave the telephones as installed now on the premises and the buyer agrees to sign a letter showing his responsibility for the bills accruing.'' The receipt stated also, ''. . . The property is sold subject to the approval of the owner.'' Underneath the signature of the agent appeared the following: ''I agree to purchase the above described property on the terms and conditions herein stated,'' which plaintiffs signed. Below their signatures appeared, ''We hereby agree to the above sale and terms thereof and agree to pay to Lawrence Block Co., Inc., a commission of . . . . . % of the total sales price.'' Defendants were not requested to and did not sign this instrument.

(d) (Referred to as Exhibit D.) A single instrument, upon which first appeared the buyer's escrow instructions and beneath those the instructions of the seller. The buyer's instructions bore date of August 12, 1943, were signed by plaintiffs August 13, 1943, stated that $65,000 would be deposited for a deed, and read: ''Hold for the Buyer a Bill of Sale, with inventory attached, subject to said Buyer's approval. No chattel search is required. Inasmuch as the consideration provided for herein includes the chattels mentioned in the above Bill of Sale, the amount of Title Company's liability in its assurance of title and the amount of U. S. Revenue stamps to be affixed and cancelled on the deed, will be handed you later and approved by both parties hereto. Affix $see above U.S.R. stamps on deed, to be paid by SELLER.'' The instructions in other respects were in the usual form and do not bear upon the matter of the sufficiency of the agreement. The seller's instructions were dated and signed August 9, 1943, and read in part: ''THE FOREGOING TERMS, CON-

DITIONS AND/OR INSTRUCTIONS ARE HEREBY CONCURRED IN, APPROVED AND ACCEPTED. I will hand you all instruments and money necessary for me to comply therewith," etc. They further stated: "Pay your Loan Department for reconveyance of Trust Deed on the property described herein. The demand is to be subject to the seller's approval." The instructions in other respects were formal and need not be noticed.

(e) A letter to the bank dated August 13, signed by plaintiffs, reading as follows: "Escrow No. 136-14740 R August 13, 1943. To Security-First National Bank of Los Angeles My previous instructions in the above numbered escrow are hereby modified-supplemented in the following particulars only: The original instructions herein are amended as follows: Procure Chattel search covering personal property in the premises conveyed in this escrow, for a period of five years. The report is to be subject to the Buyer's approval. Hold, subject to the Buyer's approval, a Termite report. The seller herein pays the charges for said search and report. The parties hereto will hand you two letters, in duplicate, both signed by both Buyers and sellers, regarding telephone and personal property not conveyed to the Buyers. At close of this escrow deliver one copy of each of said letters to each the Buyer and seller herein. Your Bank is not to be concerned with the contents of said letters, and the signatures thereon represent full approval thereof by both Buyer and Seller. The assurance of title covering the property herein is to be written with Title Company Liability of $55,000.00. Affix and cancel $60.50 U. S. Revenue Stamps on the deed and charge same to the seller in accordance with the original instructions [Signed] E. J. Thompson, Ada R. Thompson." (f) A letter to the bank, signed by plaintiffs, dated August 13, instructing that title should be vested in plaintiffs as joint tenants; (g) a letter addressed to defendants, dated August 12, requesting permission to continue in defendant's name the telephone service and listing and agreeing to pay all charges; and (h) a letter, dated August 12, addressed to defendants, agreeing to deliver to defendants within 30 days after close of escrow an 8 piece coffee set and 4 silhouettes, within four months from the date of the letter a round table, secretary and dresser and, upon demand of defendants, all other items of furniture and furnishings excepted from the sale. None of these four letters was signed by defendants.

On September 1 defendants by letter to plaintiffs stated that they revoked their offer to sell and convey the property, "for the reason that you have not accepted said offer unconditionally but have, since we made said offer, imposed upon us, as the sellers of said furnished residence, new, additional and different conditions than were contained in our said offer and which are not acceptable to us."

Plaintiffs had theretofore deposited $65,000 in escrow to be used in accordance with their instructions, but defendants did not deposit a deed or bill of sale.

Appellants place their main reliance upon the absence from the escrow instructions, Exhibit D, of any description of the personal property, contending that such description is one of the essentials of a valid agreement under the Statute of Frauds. The trial court found that by the terms and provisions of the above mentioned writings, Exhibits A, B, C, and D, defendants agreed to sell and plaintiffs agreed to purchase the real property and the furniture and furnishings, with the exceptions set forth in Exhibit C, for a price of $65,000.

█ It is the contention of appellants that Exhibit D constituted the entire contract; that it did not, expressly or by implication, refer to or incorporate any other writing and that the other writings may not be resorted to for the purpose of supplying the missing description of the personal property. In discussing this contention, we shall disregard Exhibits A and B. These were mere authorizations for the agent to find a buyer or renter for the property and were not offers addressed to plaintiffs or to the public generally. (*Holway* v. *Malloy*, 70 Cal.App.2d 317 [160 P.2d 893].) Exhibit C, however, was an offer by plaintiffs to purchase the property. When it was signed by plaintiffs it described the personal property as it was described in the listings given the agent, including a specification of the items to be excepted from the sale. The order in which the several writings were signed was the following: The agent notified defendants that plaintiffs had made an offer of $65,000 and defendants thereupon caused to be prepared the escrow instructions, Exhibit D, and they signed the seller's instructions on August 9, but retained them in their possession. On August 10 plaintiffs made their deposit of $5,000 and signed their offer, Exhibit C. The instructions, D, were then in the hands of the private secretary of Mr. Walsh, and she delivered them to defendants' attorney. On August 11 there was a meeting of the agent, defendants' secre-

tary and attorney, with plaintiffs and their attorney. Upon that occasion, as a result of negotiations, the list of excepted articles of personal property specified in Exhibit C was amended by the addition of the following: "8 piece coffee set on said table & 4 silhouettes on living room walls" and these additions were initialed by plaintiffs. Upon the following day defendants' attorney prepared the two letters, G and H, which were dated August 12. On the morning of August 13 defendants' attorney delivered the instructions, D, to the bank as escrow holder, and upon the afternoon of that day plaintiffs signed their instructions, D. Aside from the letters E, F, G, and H, which we shall mention later, the writings then consisted of plaintiffs' offer, Exhibit C, which contained a sufficient description of the personal property, plaintiffs' portion of the instructions, D, which did not contain a description of the property, but called for bill of sale with inventory attached, to be approved by the parties, and defendants' portion of the instructions, D, by which they agreed to furnish all instruments needed to comply with plaintiffs' instructions. Exhibit C was a continuing offer by plaintiffs to purchase the real property and the personal property, and it was subject to acceptance by defendants at any time before it should be revoked. Plaintiffs' instructions, D, were merely an affirmation of their offer, with certain modifications of their demands and without a description of the personal property. Defendants' instructions, D, constituted an acceptance of plaintiffs' offer to purchase as modified by plaintiffs. Although defendants' instructions were signed and dated August 9, they were deposited with the escrow holder August 13 after plaintiffs' offer, Exhibit C, as amended, had been communicated to defendants. It is quite obvious, we think, that the offer, C, and the escrow instructions, D, constituted a single agreement of the parties. Defendants, having knowledge of plaintiffs' offer, could have accepted it by the execution of any writing expressing their consent to sell on the terms offered by plaintiffs and the delivery of such writing to plaintiffs or their agent. The escrow holder was the agent of plaintiffs as well as of defendants for the consummation of the sale and was authorized to receive from defendants an acceptance of plaintiffs' offer. It was not necessary that plaintiffs' instructions, D, also, should contain a description of the personal property, nor was it necessary that defendants' acceptance contain such

description. Plaintiffs' offer was as much a part of the agreement as were the escrow instructions, and could be looked to for a description of the property which was to be the subject of the bill of sale and the inventory. In *Searles* v. *Gonzales,* 191 Cal. 426, at 432 [216 P. 1003, 28 A.L.R. 78], the court quoted from *Strouse* v. *Elting,* 110 Ala. 132 [20 So. 123], as follows: "It has been held that if all the writings adduced to establish the contract when viewed together in the light of the conditions and circumstances of the parties at the time they were written show unmistakably that they relate to the same matter and constitute several parts of one connected transaction, so that there can be no other reasonable conclusion from the evidence thus afforded than that they were written with reference to those concurrent or preceding, there is such a reference of one to the other as satisfies the rule, although there is no reference in express terms; and parol evidence is admissible to show the circumstances under which the transaction occurred and to connect the several papers constituting the contract between the parties." And our Supreme Court said (p. 431): "While the memorandum must express the essential elements of the contract with reasonable certainty, these may be gathered either from the terms of the memorandum itself or from some other paper or papers therein referred to. If one of a series of papers which appear to have some relation to the same matter is signed by the party to be charged, this is enough, as all the papers are to be considered together as forming one contract or memorandum." (See, also, *Van Cauteren* v. *Forger,* 45 Cal.App.2d 388 [114 P.2d 6]; *Sterling* v. *Title Ins. & Trust Co.,* 53 Cal.App.2d 736, 739-740 [128 P.2d 31]; *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609 [152 P.2d 774]; *Easton* v. *Ash,* 18 Cal.2d 530, 536 [116 P.2d 433].) Defendants' acceptance of plaintiffs' offer obligated them to furnish a bill of sale as well as a deed. Plaintiffs' instruction to the escrow holder calling for a bill of sale was but a part of the mechanics of closing the transaction, and the court properly looked beyond that instruction to plaintiffs' original offer for a description of the personal property and upon doing so found the agreement to be complete in that respect. An inventory was prepared, approved by plaintiffs and placed in the escrow, and no question appears to have been raised as to its correctness.

Appellants specify several particulars in which it is contended plaintiffs' demands were at variance with the

terms upon which defendants were willing to sell. They refer to the requirement in Exhibit C of a report showing the property free of termites and dry rot and to the letter (e) calling for a termite report "subject to the buyers' approval" and a title search covering the personal property. The contention is that the filing of the letter (e) with the escrow holder amounted to a refusal by plaintiffs to consummate the purchase on the terms stated in the escrow instructions (D). In considering this contention it is necessary to distinguish between instructions which go to the terms and conditions of the proposed purchase and sale and those which do not. Insofar as the instructions constitute offers and the acceptance of offers affecting the basic terms and conditions of a sale, they become a part of the contract of the parties. But they may only serve the purpose of directing the escrow holder, as agent of the parties, in matters of detail which are frequently involved and which do not go to the essentials of the contract. Custom enters into the adjustment of matters of detail, and proposals and counter proposals may be made and compromises may be effected. Demands may be made as a basis of negotiations and with the intention of withdrawing them if they are not agreed to. Where the terms of a sale have been agreed upon, additional demands by one party or the other through the escrow may not be seized upon as an excuse for withdrawing from the transaction without a good faith effort to ascertain whether they are attempts to impose new and unacceptable conditions or are merely tentative proposals. Appellants point out that one letter of August 13 required a title search of the chattels and a termite report, which were to be paid for by the sellers, and to be subject to the buyers' approval, and that this instruction also called for letters signed by both buyers and sellers regarding the telephone service and the delivery to defendants of personal property not conveyed to the buyers. They say: "We think it obvious that the making of the additional demands constitutes one act on the part of the plaintiffs with their execution of Exhibit D." And further: "None of these additional impositions were accepted by the defendant sellers and, on the contrary, they cancelled the escrow on the ground that such additional impositions were not accepted." We do not find in the stipulation of facts, the findings, or the testimony, support for the contention that, "The making of the additional demands con-

stitutes one act on the part of the plaintiffs with their execution of Exhibit D." The stipulation was that the several writings were deposited with the bank "on or about the 13th day of August, 1943," and we find nothing more definite than that in the record. However, we deem it immaterial when the letters were delivered to the escrow holder.

It will be recalled that Exhibit C provided: "The seller agrees to leave the telephones as installed now on the premises and the buyer agrees to sign a letter showing his responsibility for the bills accruing." If this was intended as one of the terms of the purchase, it was withdrawn by one of the letters deposited with the bank, addressed to the defendants, and which stated: "This will confirm our oral agreement, which is as follows: That as purchasers of your furnished residence described at 624 North Doheny Road, Beverly Hills, California, we desire that you permit us to continue in your name the telephone service and listing at present being furnished to you," with an offer to pay the bills, and a request reading: "If the above correctly states our understanding kindly so indicate by your acceptance at the bottom hereof." Exhibit C also called for a termite report showing the property free and clear of termites and dry rot. But the letter (e) modified this demand by calling only for a termite report subject to the buyers' approval. We do not doubt that if plaintiffs had adhered to their original demand, for a report showing the property to be free of termites and dry rot, a refusal by defendants to furnish a report or the furnishing of a report which showed the existence of termites or dry rot in the house would have furnished a good reason for the withdrawal of plaintiffs' offer. But we think it is quite significant that plaintiffs modified their demands so as to call for a report, but not necessarily one which showed the absence of termites, and withdrew their demand for a report showing the absence of dry rot. While we are on the subject, it may be mentioned that plaintiffs did not insist that defendants furnish the report. Someone, presumably plaintiffs, procured a report at a cost of $5.00 and plaintiffs assumed the bill.

The letter dated August 12 with reference to the delivery to defendants at specified times of the items of personal property not included in the sale was prepared on August 12 by the defendants' attorney. It related, as well, to the additional items agreed to at the conference of August 11 and, without explanatory evidence, might well have been con-

sidered by the court as a statement or confirmation of an oral agreement arrived at in this conference. It is to be remembered that in their original instructions plaintiffs had waived a title search on chattels as one of the conditions of purchase, but, by their letter to the bank, requested one which would meet with their approval, although it was not stipulated that it must show clear title.

We cannot construe these additional letters as statements of conditions upon which plaintiffs' willingness to purchase depended. The letter which referred to the chattel search and the termite report, and the one which gave instructions as to the vesting of title, were addressed to the escrow holder and each read: ''My previous instructions in the above numbered escrow are hereby modified—Supplemented in the following particulars only [stating particulars].'' Defendants expressed their refusal to go further with the deal in a letter to plaintiffs in which they referred to plaintiffs' letters (e) and (f) as imposing ''new, additional and different conditions than were contained in our said offer.'' We do not construe plaintiffs' requests with respect to the chattel search and the termite report as adding new or additional conditions to plaintiffs' instructions in Exhibit D. Upon the contrary, plaintiffs' demand with respect to the telephone, as contained in Exhibit C, was withdrawn. Their demand in Exhibit C for a report showing the property free of termites was eliminated from their instructions, D, and was modified by their letter (e), which withdrew altogether their demand for a report as to the existence of dry rot. It is quite significant that these demands stated in Exhibit C were not carried into plaintiffs' instructions, Exhibit D, which should have been done had plaintiffs intended to insist upon them as conditions upon which they would purchase. The court found that Exhibit D was a complete and binding escrow agreement and that it was not altered or rescinded by amendments or other documents proposed by plaintiffs and not signed by defendants. We are of the opinion that the instructions, D, supplemented by the description of the personal property in Exhibit C, constituted a complete agreement. Insofar as Exhibit C constituted an offer of purchase, the several demands stated therein and which were not accepted in writing by defendants were withdrawn and modified by plaintiffs' instructions in Exhibit D.

If the letters addressed to the escrow holder were delivered after the execution and delivery of the original in-

structions, they could not be given effect to alter the terms of the executed agreement (*Williams* v. *Rush*, 134 Cal.App. 554, 559 [25 P.2d 888]), and defendants would have been justified in disregarding them. But if it be assumed that the additional instructions were deposited at the same time as the original ones, which the record does not show to be the fact, they would nevertheless appear from the entire evidence to have been mere proposals, and not statements of conditions which had to be met before plaintiffs would complete their purchase. And we might add that the statement in one of the letters that the liability under the policy of title insurance should be $55,000 was not a new or additional demand. It was the duty of defendants to agree upon a reasonable amount of liability, and the figure of $55,000 does not seem unreasonable. The matter of paying off the encumbrance in an amount to be approved by defendants was no part of the agreement of sale.

Plaintiffs established their right to specific performance of the agreement. The judgment is affirmed.

Desmond, P. J., and Wood, J., concurred.