[Civ. No. 19721.   Second Dist., Div. Two.   Oct. 2, 1953.]

GEORGE KATEMIS et al., Appellants, v. IONE M. WESTERLIND, Respondent.

W. T. Stockman for Appellants.

Obegi & High and Jack B. Clark for Respondent.

FOX, J.—This is an appeal by plaintiffs from a judgment of nonsuit in an action for specific performance and damages.

The facts adduced below show that plaintiffs, who are husband and wife and long-time residents of Chicago, visited Los Angeles with the intention of making a capital investment there. Through the offices of Mr. Solon C. Solaris, a real estate salesman employed by the Atomic Realty Company and who served as plaintiffs' representative or agent in the transaction subsequently ensuing, plaintiffs were advised on February 23, 1952, of the availability for purchase of several income units, complete with designated furnishings, owned by defendant. On the same day plaintiff George Katemis delivered to Mr. Solaris a check in the amount of $1,000 to be used as a down payment in the purchase of the above property. A receipt dated February 23, 1952, was thereupon prepared by Mr. Solaris which, although failing to acknowledge the receipt of the $1,000 as a deposit on account of the purchase price, contains a description of defendant's property and describes Mr. Katemis as the purchaser thereof for the sum of $35,000. The document states that the balance is to be paid into escrow with the Security Bank within two days. In blank lines contained on the

receipt appears the following handwritten language: "Seller to furnish rent schedule of all rents from the above mentioned property. No leases on any units which are on the above mentioned property. Termite clearance to be furnished by seller showing property free and clear of termites from a licensed termite operator."

The rest of the writing consists of a printed series of terms embodying more fully the proposed agreement of the parties. The first of these terms provides, in part, for a forfeiture of the amounts paid on account by the purchaser in the event he should fail to pay the balance of the purchase price or complete the purchase as required. Number six states that the property is sold subject to the approval of the owner. Number seven reads: "Time is the essence of this contract; but the time for any act required to be done may be extended not longer than 30 days by the undersigned agent." (Mr. Solaris.) Underneath Mr. Solaris' signature appeared the following: "I agree to purchase the above described property on the terms and conditions herein stated," which plaintiff George Katemis signed. Below this latter signature the instrument reads: "I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above signed broker as a commission the sum of Five hundred dollars, or one-half the deposit in case same is forfeited by purchaser, provided the same does not exceed the full amount of the commission." This statement was signed by defendant seller.

On February 25, 1952, written duplicate escrow instructions were executed by the parties in counterpart on a form supplied by the escrow holder, the Security-First National Bank of Los Angeles. In the buyers' instructions appears the following pertinent language: "Prior to March 1, 1952, I will hand you $20,100.00 and any additional funds and instruments required from me to enable you to comply with these instructions, which you are to use provided on or before the date set forth on line 1 above (March 1, 1952), as qualified by the provision at the top of page 2 thereof, instruments have been filed for record entitling you to procure Standard Coverage Form or Joint Protection policy of title insurance . . . on real property in the County of Los Angeles . . . (description of property) showing title vested in George Katemis and Tula Katemis, his wife, as joint tenants, free of encumbrances except all general and special taxes for fiscal year 1952, 1953, . . . and . . . Mortgage or Trust Deed se-

curing an indebtedness . . . now of record . . . of $14,900.00 . . . and Seller herein will furnish a report from a pest control company, covering termites, dry rot and fungus . . . at (description of property.) If said report discloses infestation, seller agrees to eliminate such infestation and repair damage at his expense, but no preventive work shall be required. Seller authorizes payment for making inspection report if a bill is presented in this escrow. . . . Seller will deposit in escrow for delivery to buyer at close of escrow . . . a Bill of Sale in favor of the buyer, covering furniture and fixtures situated in Apartments 2, 3 and 4 of the above described property. . . ." (Parentheses added.)

The provision at the top of page two, previously referred to, is as follows: "If the conditions of this escrow have not been complied with prior to the date set out on line one (March 1, 1952), or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time, have been complied with, unless written demand shall have been made upon you not to complete it." (Parentheses supplied.)

The seller's instructions, which follow immediately after the buyers' and were signed at the same time, read in part as follows: "I HEREBY APPROVE AND AGREE TO BE BOUND BY THE FOREGOING INSTRUCTIONS AND PROVISIONS, PRIOR TO the date set out on line 1 herein. (March 1, 1952.) I will hand you *all instruments* and money necessary for me to comply therewith, including a deed of the property described. . . ." (Emphasis added.) Except for the further instruction to pay a commission of $500 to the Atomic Realty Company, seller's instructions were of a formal and conventional nature and require no recitation.

At the time the escrow was opened, plaintiffs' check for $1,000, previously deposited with Mr. Solaris, was placed in escrow, leaving a cash balance due of $19,100. Prior to March 1, 1952, defendant deposited with the escrow holder all instruments called for on her part by the instructions save a termite report. Meanwhile, plaintiffs had departed for Chicago immediately upon the opening of escrow on February 25, 1952, in order to procure the funds required of them. In the early afternoon of February 29, 1952, plaintiffs posted in the United States post office in Chicago, Illinois, a registered air-mail letter addressed to the escrow holder containing a cashier's check in the amount of $19,350. March 1 and 2, 1952, being respectively a Saturday and a Sunday,

the escrow-bank was closed. The said cashier's check was therefore not applied to plaintiffs' escrow account until Monday, March 3, 1952. Similarly, the termite report to be furnished by seller, which was dated February 29, 1952, was received in escrow on March 3, 1952. This report disclosed a degree of dry rot and infestation with a suggestion as to corrective measures recommended and offered to perform the necessary work for $925.

On March 5, 1952, defendant wrote to the escrow holder instructing it to cancel the escrow because the "purchasers did not comply with their agreement in said escrow to deposit with you the sum of $20,100.00 prior to March 1, 1952."

On May 15, 1952, plaintiffs filed the present suit for specific performance and damages, appending as exhibits to their complaint the deposit slip constituting the offer and acceptance and the escrow instructions as evidence of the entire agreement between the parties. Upon plaintiffs' presentation at the time of trial of the evidence previously related, the court granted defendant's motion for a judgment of nonsuit, from which plaintiffs prosecute this appeal. Since the oral and documentary evidence developed below establish plaintiffs' prima facie right to specific performance, the judgment of nonsuit is clearly erroneous.

It may be well to advert here to several prefatory propositions of law relevant to the determination of this appeal. ■ It is well settled that where an agreement is expressed through the medium of a series of writings such documents must be construed collectively in ascertaining the whole contract between the parties. (Civ. Code, § 1642.) ■ Escrow instructions which are merely a customary and conventional means of consummating an underlying executory contract for the sale of real property do not supplant such agreement but merely serve to carry it into effect. (*King* v. *Stanley,* 32 Cal.2d 584, 589 [197 P.2d 321]; *Keelan* v. *Belmont Co.,* 73 Cal.App.2d 6, 12 [165 P.2d 930].) ■ Thus, where the terms of an executory agreement for the sale of real property are clarified and elucidated by the provisions contained in escrow instructions, both instruments are to be considered together in arriving at the total understanding of the contracting parties and in fixing their correlative rights and obligations. (*Tetenman* v. *Malekov,* 90 Cal.App. 625 [266 P. 367]; *Hawes* v. *Lux,* 111 Cal.App. 21 [294 P. 1080]; *Pigg* v. *Kelley,* 92 Cal.App. 329, 332 [268 P. 463]; *Thompson* v. *Walsh,* 76 Cal.App.2d 188, 194 [172 P.2d 745].) ■ It is

also to be borne in mind that where, as here, a judgment of nonsuit is granted, an appellate court in reviewing such judgment must construe the evidence most strongly against defendant and indulge in every inference and presumption fairly arising from the evidence in favor of plaintiff. (*Slater* v. *Shell Oil Co.,* 39 Cal.App.2d 535, 539 [103 P.2d 1043].)

It is beyond cavil that plaintiffs herein who are seeking specific performance have tendered in full the entire balance due on the purchase price. Defendant contends that since the time fixed for such performance in the escrow instructions was prior to March 1, 1952, the arrival of plaintiffs' funds on March 3, 1952, was too late and thus defeats their right to specific performance. This argument is untenable, since nowhere is it clearly manifest that deposit of the money by plaintiffs prior to March 1, 1952, is the essence of the contract. ■ Professor Pomeroy, in his treatise on Specific Performance, states "the prescribing a day at or before which, or a period within which, an act must be done, even with a stipulation that it shall be done at or before the day named, . . . does not render the time essential with respect to such an act." (§ 392, p. 835.) ■ The general rule in equity is that time is not of the essence unless it has been made so by its express terms or is necessarily so from the nature of the contract. (Williston on Contracts, vol. III (rev.ed. 1936), p. 2385.) ■ In *Miller* v. *Cox,* 96 Cal. 339 [31 P. 161], it is stated that the intent to make a particular date, or time, "the essence of the contract must be clearly, unequivocally and unmistakably shown by an express declaration. . . . In order to render time thus essential, it must be clearly and expressly stipulated that it shall be so; it is not enough that a time is mentioned during which or before which something shall be done [citations]." (P. 345.) ■ This language has in substance been reiterated in *Walsh* v. *Walsh,* 42 Cal.App.2d 287, 292 [108 P.2d 765] ; *Cushing* v. *Levi,* 117 Cal.App.94, 104 [3 P.2d 958] ; *Flagler* v. *Kroonen,* 61 Cal.App. 359, 366-367 [214 P. 1006] and is in consonance with the modern view that valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement will work injustice after a delayed tender. (*Cockrill* v. *Boas,* 213 Cal. 490 [2 P.2d 774] ; *Mathews* v. *Davis,* 102 Cal. 202 [36 P. 358].)

■ Nowhere in the escrow instructions is there any clear-cut language manifesting an intent to make time of the

essence. The sole reference therein to this matter appears in the buyers' escrow instructions, agreed to by defendant, providing that if the conditions had not been complied with at the time therein provided, the escrow holder might nevertheless complete the escrow as soon as the conditions (except as to time) had been fulfilled. This somewhat confusing and ambiguous language does not ''clearly, unequivocally and unmistakably'' show an intent to make time of the essence of the contract. It patently does not expressly declare such to be the intention of the parties, nor does it do so with any degree of reasonable certainty. Escrow instructions containing the identical language were held not to constitute a declaration that time was of the essence. (*Lifton* v. *Harshman*, 80 Cal.App.2d 422, 433-434 [182 P.2d 222].)

In examining the instrument prepared on February 23, 1952, by Mr. Solaris containing the buyers' offer, which was accepted by defendant, the following time-clause appears: ''Time is the essence of this contract, but the time for any act required to be done may be extended not longer than thirty days by the undersigned agent.'' Here we are confronted with an unmistakable indication that performance by the vendee, on the day nominally appointed, cannot be of crucial significance to the vendor, since Mr. Solaris, the agent of the plaintiffs in this case and under accustomed principles of agency susceptible to direction by his principal, is given the right to defer the performance of any act for an additional 30 days, without even a provision for notice. Under such circumstances, it hardly lies in the mouth of defendant to assert that payment by the vendee before March 1, 1952, was essential or of compelling materiality when the buyers' agent was empowered to extend the performance of this or any other act to a time beyond the dates here involved. To lodge such authority in the buyers' agent is inconsistent with the supposition that the precise time specified for the buyers' performance is of the essence of the contract.

In *Henck* v. *Lake Hemet Water Co.*, 9 Cal.2d 136, 144 [69 P.2d 849], the following language appears: ''The theory upon which the courts hold that in such cases time is of the essence, is that damage resulting to the seller by reason of delay in performance on the part of the purchaser cannot be estimated nor compensated [citations].'' Writing on the same theme, it is said in *Vorwerk* v. *Nolte*, 87 Cal. 236, 240 [25 P. 412] : ''It is a matter of common understanding that when these words—'time is of the essence of this contract'—

are used . . . their purpose is to protect the vendor against delays in payment of the purchase price, and the tying up of his estate beyond the fixed period, without the payment of the agreed compensation therefor. . . ." ██ Clearly a delay of three days by vendee in tendering full performance under a contract susceptible of extension by vendee's agent results neither in damage which "cannot be estimated or compensated" nor in tying up the vendor's estate "beyond the fixed period, without the payment of the agreed compensation," when such performance is given within the period possible of extension contemplated by the parties. If any default can be said to have occurred, it was at most a technical and unintentional default, calling for the interposition of section 3392 of the Civil Code, which provides: "Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled, upon full compensation being made for the default."

Defendant's purported cancellation of the contract of March 5, 1952, after full performance by plaintiffs and with no intervening change in circumstances as would render enforcement of the contract inequitable, was, therefore, thoroughly unwarranted.

It is apposite to point out that even were we to consider time of the essence of this agreement, the judgment of nonsuit was nevertheless erroneous. ██ Under the terms of the escrow instructions, plaintiffs agreed to deposit in escrow prior to March 1, 1952, the sum of $19,150. Defendant seller also agreed that prior to March 1, 1952, she would deposit in escrow all instruments necessary for her to comply with the escrow instructions. These respective obligations, viz., plaintiffs' deposit of the money and defendant's deposit of all requisite instruments, were thus concurrent conditions; that is, they were mutually dependent, each promise given in consideration for the other, and each being due at the same time. (Civ. Code, § 1437.) This principle is more elaborately set out in section 267 of the Restatement of Contracts as follows: "Promises for an agreed exchange are concurrently conditional, unless a contrary intention is clearly manifested,

if the promises can be simultaneously performed . . ; where by the terms of the promises

(a) at the same time is fixed for the performance of each promise; or . . .

(d) the same period of time is fixed within which each promise shall be performed.'' █ That this is the accepted modern view is reflected in the following quotation from 12 American Jurisprudence, Contracts, page 850: ''In brief, the courts will construe promises as dependent unless a contrary intention clearly appears. All promises in a bilateral contract will be regarded as mutually dependent whenever it is possible so to interpret them.'' California conforms to the rules set out in the sections of the Restatement quoted above. (*Lemle* v. *Barry,* 181 Cal. 6 [183 P. 148]; *Hanson* v. *Slaven,* 98 Cal. 377 [33 P. 266]; *Dennis* v. *Strassburger,* 89 Cal. 583 [26 P. 1070].)

█ Applying these rules to the case at bar, it is clear that in a contract for the sale of real estate calling for concurrent performance, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance. (*Dennis* v. *Strassburger, supra; Downer* v. *Buehrle,* 90 Cal.App.2d 719 [203 P.2d 795]; *McDorman* v. *Moody,* 50 Cal.App.2d 136 [122 P.2d 639].) ''Before respondents could require appellant to perform his part of the agreement they must have fulfilled all conditions precedent imposed upon them and must have been able to fulfill and must have offered to fulfill all conditions concurrent imposed on them [citations].'' (*Lifton* v. *Harshman,* 80 Cal. App.2d 422, 432-433 [182 P.2d 222].) It was not until March 3, 1952, that defendant delivered into escrow the termite report required by the agreement. It was at the same time that plaintiffs completed performance on their part by depositing. the full amount of the balance due under the contract. █ There was present, therefore, what was described in *Kerr* v. *Reed,* 187 Cal. 409, 414 [202 P. 142], as ''. . . the simple situation where both parties to a contract in which time is made the essence thereof allow the date of final payment to pass without action. Under these circumstances neither party can be subsequently placed in default without a tender [citation].'' Since defendant could not have demanded performance from plaintiffs until March 3, 1952, when they had themselves given full performance, and since plaintiffs had on that date deposited the full balance due, it follows that the contract was in full force and effect when

on March 5, 1952, defendant attempted to place plaintiffs in default and terminate their rights under the contract. (*Kerr* v. *Reed, supra*; *Lamont* v. *Ball,* 93 Cal.App.2d 291, 293 [209 P.2d 9]; *Urban* v. *Yoakum,* 89 Cal.App. 202, 208 [264 P. 493].)

Defendant cites a number of authorities which are divergent in crucial aspects from the case here presented. In general, they constitute situations where the party praying judgment failed to adhere to the conditions of the agreement prior to commencing suit or where a nondefaulting party had given proper notice of the forfeiture of the defaulting party's rights under the agreement prior to the latter's tender of performance. Thus, in *Evarts* v. *Johnston,* 34 Cal.2d 6 [206 P.2d 633], the vendees deposited only $450 of an agreed $1,150 into escrow before seeking specific performance; the court found, therefore, that they had failed to comply with the conditions of the contract. In *Cockrill* v. *Boas,* 213 Cal. 490 [2 P.2d 774], the buyer was required to deposit $55,000 in escrow. This was not done, nor was tender made prior to suit; hence, he was disentitled to the relief sought. *Boulenger* v. *Morison,* 88 Cal.App. 664 [264 P. 256], was an action wherein the court found that the real estate broker and the buyer were colluding to defraud the seller into signing an agreement which, as to him, was not "just and reasonable." It was further found that the buyer never placed in escrow the money called for in the contract. In *Davy* v. *Ogier,* 87 Cal. App.2d 835 [198 P.2d 92], the purchaser seeking specific performance deposited into escrow the full amount due. But the escrow holder could not pay this sum over to the seller because of the buyer's instruction to "hold until O.K. from Mr. Bowman" (buyer's broker). Since this instruction was never revoked, the court ruled that the buyer had not performed within the prescribed time. In *Ward* v. *Downey,* 95 Cal.App.2d 680 [213 P.2d 523], the court had before it two written agreements which are not set out in full, but which together constituted the agreement of purchase and sale and which provided that time was to be of the essence. The time fixed for closing the escrow was October 10, 1947. On that day, plaintiffs were unable to supply the necessary instruments to convey title to defendants. On October 11, 1947, defendants served written notice of their termination of the escrow as provided by the contract. It was not until October 17, 1947, that plaintiffs were able to convey good title. The court denied specific performance, since plaintiffs had failed

to provide the title required by the contract within the time prescribed and defendants thereupon terminated the contract in accordance with the express provision of the escrow instructions.

It would be a work of supererogation, and result in a profitless prolongation of this opinion, to discuss the remaining cases cited, in each of which the party seeking affirmative relief was in such flagrant default under the terms of the agreement as to preclude the award of specific performance. It is obvious no such considerations are here present to impel a similar result.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.