[Civ. No. 23843.   Second Dist., Div. Two.   Nov. 12, 1959.]

ART DIAMOND, Appellant, v. CHARLES W. HUENERGARDT, Respondent.

William A. Rutter and Irmas & Rutter for Appellant.

J. H. Cummins for Respondent.

HERNDON, J.—Plaintiff brought this action to recover from defendant a real estate broker's commission. The action was originally tried in the Municipal Court of the Los Angeles Judicial District and plaintiff there recovered judgment for the full amount of the commission sought ($2,462.50) plus attorneys' fees in the amount of $500 and costs. This judgment was reversed by the appellate department of the superior court. Plaintiff thereafter filed an amended and supplemental complaint praying for the same broker's fees but increasing the prayer for attorneys' fees to $1,000. This increase brought the prayer above the jurisdictional limits of the municipal court and the case was transferred to the superior court. On retrial in the superior court judgment was rendered in favor of defendant and plaintiff appeals therefrom.

The case was submitted to the superior court on an agreed statement which incorporated the reporter's transcript of the oral proceedings on the former trial. There being no substantial dispute as to the facts, the determinative issues involve only questions of law.

On September 21, 1955, plaintiff broker and defendant vendor executed an "Exclusive Right to Sell" agreement, wherein defendant employed plaintiff for a 90-day period to find a purchaser for the real property therein described and agreed to pay plaintiff a commission of 5 per cent of the selling price. Defendant further agreed to convey merchantable title, as evidenced by a California Land Title Association standard coverage form policy of title insurance, to be paid

for by defendant, and "[s]hould title prove unmerchantable, all deposits may be returned to purchaser without liability on part of agent and seller shall be liable for agent's commission and all escrow costs." This agreement further provided that should the purchasers default, any deposit or payment made by them "shall be retained by or paid to the agent [plaintiff broker] but not in excess of 5% of the selling price and the balance to be retained by seller; agent shall have a lien on said monies for commission."

Plaintiff procured Mr. and Mrs. Victor Jacobsen as prospective purchasers of the property and on October 2, 1955, an agreement was entered into whereby defendant agreed to sell and the Jacobsens agreed to purchase the property. This agreement was embodied in a deposit receipt, which acknowledged receipt of a deposit of $5,000 on a purchase price of $49,250, "[b]uyer to obtain new loan of $23,500.00 5% interest in 20 yrs. Seller to take back 2nd T.D. in the amount of $15,750.00 payable $157.50 a month or more including 6% interest all due in three yrs., from close of escrow. Seller to pay off all loans and liens of record. . . . This is to be a ninety day escrow or sooner." Paragraph 1st provided "That in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall be retained, one half by real estate agent, provided, however, that said real estate agent's portion of any forfeiture shall not exceed the amount of his commission and balance to be paid to seller, in consideration of accepting this agreement." Paragraph 2d provided "That in the event the title to said property shall not prove merchantable and said seller shall not perfect, or be able to perfect, the same within a reasonable time from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligations hereunder." Paragraph 3d provided that evidence of title was to be in the form of a title insurance policy, issued by a responsible title company, and furnished and paid for by the seller. Paragraph 7th stated that "Time is the essence of this contract; but the time for any act required to be done may be extended not longer than thirty days by the undersigned agent." The deposit receipt further contained an agreement by defendant vendor to pay plaintiff a broker's commission in the amount of $2,462.50, or one-half of the deposit in the event the deposit was forfeited by the purchaser, said one-half not to exceed the stated commission.

On October 4, 1955, an escrow was opened at the Security First National Bank of Los Angeles, Ventura-Sepulveda Branch, and escrow instructions were executed by the defendant as vendor and the Jacobsens as vendees. Paragraph 1 as amended and corrected provided that prior to January 4, 1956, the purchasers were to pay the total consideration of $49,250 in cash. The instructions provided that consummation of the escrow was to be contingent upon the buyers' securing a loan of at least $23,500. They further provided that if the conditions of the escrow were not complied with by January 4, 1956, the escrow agent was nevertheless to complete the escrow unless he had received written demand to the contrary. By those provisions of the escrow instructions which set forth the promises of the seller, defendant expressly agreed that "I hereby approve and agree to be bound by the foregoing instructions and provisions. *Prior to the date set out on line 1 herein* [January 4, 1956] I will hand you all instruments and money necessary for me to comply therewith, including a deed of the property described . . ." (Emphasis supplied.) *One of the instruments which defendant was specifically required to deposit in the escrow was a policy of title insurance from the Title Insurance and Trust Company showing the property to be free and clear of encumbrances.* This designation of the named title company was in a typewritten addition to the printed form escrow instructions.

Before January 3, 1956, the purchasers advised the escrow holder that they had obtained the loan. On January 4, 1956, there was on deposit $17,950. At 3 p. m. on January 4th the defendant cancelled the escrow by a written notice addressed to the escrow holder reading as follows: "The undersigned Seller, in the above numbered escrow, hereby gives notice of cancellation and directs you not to complete said escrow for the reason that the purchasers have not complied with said instructions in failing to deposit the balance of the purchase price prior to January 4, 1956. The undersigned Seller hereby demands that you return to him all documents deposited by him in said escrow." At 4.57 p. m. on January 4th plaintiff broker purported or attempted to exercise the power given him by the terms of the deposit receipt to extend the closing date of the escrow 30 days. It is to be noted, incidentally, that our conclusions with respect to other controlling issues of law are such as to make it unnecessary for us to decide whether or not this act on the part of plaintiff was effec-

tive to extend the time allowed the purchasers for the deposit of the balance of their money in escrow.

On January 5th the additional sum of $25,000 was deposited in escrow. These funds represented the proceeds of a loan obtained by purchasers from an insurance company. Apparently, although the loan had been approved at an earlier date, payment of the funds into escrow was conditioned upon obtaining clearance from the Title Insurance and Trust Company with respect to a certain easement over the property which clearance was not obtained until January 5th. On that day, also, the purchasers, accompanied by the broker, went to the office of the escrow holder and tendered the additional sum of $8,900 needed to close the escrow. The escrow officer refused to accept this tender because of defendant's cancellation of the escrow on the preceding day.

Certain additional facts—facts unknown to plaintiff at the time of the first trial and, hence, not proven therein—must now be recited. On December 20, 1955, defendant's former wife caused a writ of attachment to be levied against defendant's interest in the real property in the amount of $12,300. This writ stood of record against the property from December 20, 1955, until February 8, 1956, and was thus a matter of record on January 4, 1956, when defendant cancelled the escrow. Defendant did not notify either the plaintiff, the purchasers, or the escrow holder of the existence of this attachment lien. It has been stipulated that certain letters concerning this writ of attachment may be considered a part of the record on this appeal. These letters, dated December 27 and 28, 1955, respectively, were exchanged by the attorneys representing defendant and his former wife. In substance they embody an agreement that the writ of attachment would be released on defendant's payment of the sum of $12,300, which payment was to be made out of any monies deposited in escrow in connection with a sale of the property here involved. The letter addressed to defendant's attorney by the attorney for the attaching creditor stated, among other things: "As soon as the escrow is opened, we will deposit therein a Dismissal with Prejudice and Release of Attachment, the same to be filed at close of escrow. . . . The escrow shall be opened not later than the 10th of January, and closed not later than the 1st of February, 1956." As we have previously noted, the lien of the attachment was not actually removed until February 8, 1956.

It was stipulated that Albert F. Jones, Title Officer of the

Title Insurance and Trust Company, would testify that said title company would have shown the attachment lien as an exception in any title policy issued by it and would have refused to assume any liability in connection with the attachment until it was released.

After defendant's formal cancellation of the escrow on January 4, 1956, the escrow holder returned to plaintiff the $5,000 deposit which he had made on behalf of the purchasers. Plaintiff, taking the view that defendant's cancellation was premature, returned the deposit to the purchasers and demanded payment of his commission from defendant. This action followed defendant's refusal of said demand.

The trial court found, among other things: (1) that plaintiff had not "procured a purchaser or purchasers ready, willing or able to purchase defendant's premises on the terms specified by defendant as contained in the listing agreement . . . and the deposit receipt . . . as supplemented by the Escrow Instructions . . ."; (2) "that defendant cancelled the Escrow Instructions after the purchasers were in default and before the purchasers had complied with the terms of the escrow"; (3) "that plaintiff received from the sum deposited by the purchasers in escrow the full amount to which he was entitled"; (4) that the sale was not consummated, not because of any default on defendant's part but because the purchasers failed to pay the purchase money into escrow within the time specified in the agreement; and (5) "that defendant was entitled to cancel the agreement and the escrow to sell the premises because of purchasers' default."

We conclude that the judgment under review must be reversed because certain of the essential findings upon which it rests are contrary to the undisputed facts. The trial court's conclusion that under the circumstances here established defendant was entitled to cancel the escrow and thereby relieve himself of the obligation to pay the broker's commission is erroneous as a matter of law.

It is settled law that where an owner of property accepts the offer made by a person produced by the broker employed to make the sale, he thereby admits the readiness, willingness and ability of the purchaser to consummate the sale. It has been held that under such circumstances the owner is estopped to deny the purchaser's ability or willingness to complete the purchase. (*Deeble* v. *Stearns,* 82 Cal.App.2d 296, 299 [186 P.2d 173] ; *Ralston* v. *Demirjian,* 86 Cal.App.2d 124, 126 [194 P.2d 41] ; *Moore* v. *Balboa Escrow*

*Co.,* 116 Cal.App.2d Supp. 921, 923 [253 P.2d 1043]; *Austin* v. *Richards,* 146 Cal.App.2d 436, 439 [304 P.2d 132]; 9 Cal. Jur.2d 249, § 83.)

The foregoing rule of law as applied to the undisputed facts of the instant case compels the conclusion that the record does not sustain the trial court's finding with respect to the willingness and ability of the purchasers to complete the purchase.

■ Moreover, defendant's position on January 4, 1956, was not such as to justify his cancellation of the escrow. He had not complied with his express obligation to deposit in the escrow, *prior to the specified date,* the instruments required of him, including a deed and a policy of title insurance from the designated title company showing a title free of encumbrances. Not only had defendant failed to tender the required title policy, but the record demonstrates that he was not in a position to tender such a policy at the time he cancelled the escrow and repudiated the sale.

■ In cases involving similar factual situations and dealing with land sale contracts substantially identical in terms with those of the instant case, it has been held that the obligation of the purchaser to deposit the purchase money and the obligation of the seller to deposit the instruments required of him are mutually dependent and concurrent conditions. (*Katemis* v. *Westerlind,* 120 Cal.App.2d 537, 545, 546 [261 P.2d 553]; *King* v. *Stanley,* 32 Cal.2d 584, 590 [197 P.2d 321]; *cf. Groobman* v. *Kirk,* 159 Cal.App.2d 117, 122, 123 [323 P.2d 867].) In order for one party to such a contract to place the other in default, he must tender performance of the concurrent conditions required to be performed on his part. (*Thein* v. *Sticha,* 93 Cal.App.2d 295, 300 [209 P.2d 13]; *Lemle* v. *Barry,* 181 Cal. 6, 10 [183 P. 148]; *Kerr* v. *Reed,* 187 Cal. 409, 414 [202 P. 142].)

In *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d 537, this court held that under a deposit receipt and escrow instructions in all material respects identical to the documents involved in the case at bar, time was not made expressly of the essence of the contract. And, under the rather comparable circumstances of that case, we held that the fact that the buyers tendered payment of the purchase money three days after the closing date specified in the contract did not defeat their right to specific performance. We further held that even if time were considered to be of the essence of the contract, nevertheless under the circumstances of that case the

tardiness of the buyers in tendering the purchase money did not place them in default. There the buyers had agreed to deposit the balance of the purchase money on or before March 1, 1952, and the seller had agreed to deposit all instruments, including a termite report, necessary for her to comply with the escrow instructions by the same date.

Civil Code, section 1437,[1] and section 267 of the Restatement of Contracts were cited in support of the following comments made at pages 545 and 546 of the opinion: "These respective obligations, viz., plaintiffs' deposit of the money and defendant's deposit of all requisite instruments, were thus concurrent conditions; that is, they were mutually dependent, each promise given in consideration for the other, and each being due at the same time. . . . Applying these rules to the case at bar, it is clear that in a contract for the sale of real estate calling for concurrent performance, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance. (*Dennis* v. *Strassburger, supra,* 89 Cal. 583 [26 P. 1070]; *Downer* v. *Buehrle,* 90 Cal.App.2d 719 [203 P.2d 795]; *McDorman* v. *Moody,* 50 Cal.App.2d 136 [122 P.2d 639].) 'Before respondents could require appellant to perform his part of the agreement they must have fulfilled all conditions precedent imposed upon them and must have been able to fulfill and must have offered to fulfill all conditions concurrent imposed on them [citations].' (*Lifton* v. *Harshman,* 80 Cal.App.2d 422, 432-433 [182 P.2d 222].) It was not until March 3, 1952, that defendant delivered into escrow the termite report required by the agreement. It was at the same time that plaintiffs completed performance on their part by depositing the full amount of the balance due under the contract."

Obviously, the obligation of the seller in the case at bar to deposit a title policy (to be written by a specifically designated title company) was not less vital than the obligation of the seller in the *Katemis* case to deposit the termite report. In *Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 247 [270 P.2d 563], the court had under consideration a land sale contract providing that "evidence of title was to be in form of a policy of title insurance issued by a responsible title company." The court, in this connection, observed: "This is not an unusual requirement, as indicated by *King* v. *Stanley,* 32 Cal.2d

---

[1]Section 1437. "Conditions concurrent are those which are mutually dependent, and are to be performed at the same time."

584, 590 [197 P.2d 321], in which the court said that title insurance 'is a reasonable method by which a vendee may determine the merchantability of the vendor's title . . .' "

Respondent relies on the decision in *Pitt* v. *Mallalieu*, 85 Cal.App.2d 77 [192 P.2d 24], for the proposition that the purchasers in this case would not have been entitled to specific performance. The case is readily distinguishable. There the purchaser who unsuccessfully sought specific performance was shown to have been more than two years late in tendering performance. Furthermore, we are not here concerned with the rights of the purchaser. The right of plaintiff broker to recover his commission does not necessarily depend upon the purchaser's right to specific performance. Plaintiff was employed by the defendant seller under a contract separate and distinct from the contract between purchaser and seller.

It is the general rule that even where the broker's contract provides for the payment of his commission only when the transaction is actually completed, or only out of the purchase money, the broker is entitled to recover his commission from the seller by whom he was employed if the transaction has failed of completion through the fault of the seller. (*Swanson* v. *Thurber*, 132 Cal.App.2d 171, 177 [281 P.2d 642]; 9 Cal.Jur.2d 272-273 and cases cited.)

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.